INTERCOUNTY ·OPERATING CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 110381, 112302.   Promulgated September 28, 1944.

*H. B. McCawley, Esq.*, for the petitioner.
*F. S. Gettle, Esq.*, for the respondent.

58

**OPINION.**

TYSON, *Judge*: There is no controversy between the parties as to the excess of the amounts received by petitioner in the taxable years

from the redemption of tax liens held by it above the amounts paid by it in the purchase of such liens; and petitioner does not deny that such excess was gain, but denies that it was interest, as is contended by respondent. It is also undisputed that all of petitioner's outstanding stock was then owned by not more than five individuals and that over 94 percent of its gross income for the fiscal year ended January 31, 1940, and over 99 percent of its gross income for the fiscal year ended January 31, 1941, consisted of such excess, thus bringing petitioner, with regard to such stock ownership and percentages of gross income, within the provisions of section 501 (a) (1) and (2) of the Internal Revenue Code [1] relating to the definition of a personal holding company and its income within section 502 of that code if such excess constituted interest. The first issue therefore is whether such excess constituted interest within the meaning of section 502 (a) of the Internal Revenue Code.[2]

On the first issue respondent contends that the New York statutes designate as "interest" the amount of the gain realized by petitioner through the redemption of its tax sale certificates, represented by certain percentages upon the amount paid for such certificates, and that for that reason alone such gain should be held to be interest within the meaning of section 502 (a), *supra*, and in the amount of at least 80 percent of petitioner's gross income under section 501 (a) (1), *supra*. He also contends that the gain constitutes such interest within the broad meaning of section 502 independently of the provisions of the New York statutes. Petitioner contests these contentions.

We will first consider the effect of the New York statutes on the question of whether the gains represented by the percentages on the amounts paid by petitioner for the tax lien certificates and received by it from redemption of its tax liens constitute interest includible in petitioner's personal holding company income under section 502 (a), *supra*.

Chapter 477 of the Laws of New York of 1932, which was operative

---

[1] SEC. 501. DEFINITION OF PERSONAL HOLDING COMPANY.

(a) GENERAL RULE.—For the purposes of this subchapter and chapter 1, the term "personal holding company" means any corporation if—

(1) GROSS INCOME REQUIREMENT.—At least 80 per centum of its gross income for the taxable year is personal holding company income as defined in section 502; but if the corporation is a personal holding company with respect to any taxable year beginning after December 31, 1936, then, for each subsequent taxable year, the minimum percentage shall be 70 per centum in lieu of 80 per centum, until a taxable year during the whole of the last half of which the stock ownership required by paragraph (2) does not exist, or until the expiration of three consecutive taxable years in each of which less than 70 per centum of the gross income is personal holding company income; and

(2) STOCK OWNERSHIP REQUIREMENT.—At any time during the last half of the taxable year more than 50 per centum in value of its outstanding stock is owned, directly or indirectly, by or for not more than five individuals.

[2] SEC. 502. PERSONAL HOLDING COMPANY INCOME.

For the purposes of this subchapter the term "personal holding company income" means the portion of the gross income which consists of:

(a) Dividends, interest (other than interest constituting rent as defined in subsection (g)), royalties, (other than mineral, oil, or gas royalties), annuities

during the years of the purchase of the tax lien certificates and the redemptions of the lands involved and deals with the sale of lands for taxes and the redemption of same in Nassau County, New York, and amends section 85 of chapter 541 of the Laws of 1916, as added by chapter 154 of the Laws of 1919, provides, in part, as follows:

Section 85. * * * Such lands shall be sold for an amount sufficient to pay all the taxes and assessments due thereon for the years for the taxes of which said sales shall be made with interest thereon to the time of sale, and all costs, expenses and charges accrued thereon and * * * said amount paid for such property shall carry and bear the maximum interest and penalties as follows: Ten per centum on the purchase price, if redeemed within 6 months of date of sale. An additional 10 per centum on the purchase price if redeemed after the expiration of six months and within twelve months of the date of sale * * * (followed by similar language with regard to additional percentages covering each six months until four years have expired) * * * The rate of interest at which any person or persons shall offer to take the lot or parcel of land to be sold shall be established by his bid. The rate thus established shall be the rate of interest up to the time of the redemption of the property purchased and until the expiration of four years.

Section 89. The owner of, or any person interested in, * * * any real estate sold for taxes * * * as aforesaid, may redeem the same at any time within forty-eight months after the date of such sale upon the following terms: If redeemed within Forty-five months by paying to the county treasurer the sum for which such property was purchased with the interest or penalties thereon, * * * calculated and added to such purchase price as provided in section eighty-five hereof. * * *

The provisions of chapter 175 of the Laws of New York, 1937, section 45, and chapter 152 of the Laws of New York of 1929, section 49, with reference to the sale of lands for unpaid taxes and their redemption in Suffolk County, New York, are, in effect, identical with sections 85 and 89 of the Laws of New York, 1932, chapter 477, above quoted, except that the maximum rate of interest and penalties is 6 percent instead of 10 percent and the period of redemption is 36 instead of 48 months.

The provisions of chapter 175, *supra*, above referred to, were in effect, as agreed by the parties on brief, during the years of the purchases of the tax lien certificates and the redemption of the lands involved.

Chapter 441 of the Laws of New York of 1938, as amended, with regard to Monroe County, provides for sales at public auction of so much of a parcel of land as may be necessary to discharge the taxes, interest, and charges on the whole parcel. Sections 20, 22, and 31 thereof are substantially the same as sections 6 and 8 of chapter 107 of the laws of 1884, in effect prior to April 4, 1938, and provide, in part, as follows:

Section 20. Payments and fees—The purchasers at such sale shall pay the amounts of their respective bids to the said treasurer immediately after the sale, and after such payments shall have been made the said treasurer shall add

a penalty of ten per centum thereto for the benefit of the said purchasers, and shall give the purchaser of any such real estate a certificate describing the lands purchased, the sum paid and the penalty attached thereto, * * *

Section 22. Redemption of lands for unpaid taxes—At any time within two years after the last day of any sale of land for taxes as aforesaid, any person may redeem the same by paying to the county treasurer, for the use of the purchaser, * * * the sums mentioned in his certificate, with interest thereon at the rate of ten per cent per annum from the date of such sale.

Section 31. Lien holders may redeem.—Any person having an interest in or lien upon premises sold for taxes, pursuant to the provisions of this act, and remaining unredeemed after the expiration of the two year period prescribed in section twenty-two of this act, may thereafter and at any time before proceedings are instituted by any purchaser to obtain possession and title of lands sold for unpaid taxes * * * redeem said land by paying into the county treasury such consideration money with the addition of thirty-five percentum thereon * * *.

The above provisions of chapter 441, or their counterparts in chapter 107, *supra*, were in effect, as agreed by the parties on brief, during the years of the purchases of the tax lien certificates in Monroe County by petitioner and the redemption of the lands in that county from such liens.

The contention of respondent that the gains of petitioner from the redemption of its various tax lien certificates constitute interest within the meaning of section 502 (a), *supra*, because the New York statutes designate the percentages received by petitioner (which represent such gains) as interest is fallacious, for the reason, if none other, that those statutes do not designate the percentages as being comprised of interest alone, but designate them as including interest and penalties, without any allocation of the percentages as between interest and penalties and without providing a method by which they may be allocated, except possibly as to Monroe County.

However, there is another and conclusive reason why this contention of respondent is fallacious, even if the percentages were plainly designated in the New York statutes as interest, that reason being that such designation would not control the interpretation of the meaning of the word "interest" as it is used in section 502 (a), *supra*. The well established rule applying to the interpretation of a Federal statute such as is here being considered is stated in *Burnet* v. *Harmel*, 287 U. S. 103, 110, as follows:

It is the will of Congress which controls, and the expression of its will in legislation, in the absence of language evidencing a different purpose, is to be interpreted so as to give a uniform application to a nationwide scheme of taxation. * * *. State law may control only when the federal taxing act, by express language or necessary implication, makes its own operation dependent upon state law.

See also *Lyeth* v. *Hoey*, 305 U. S. 188; and *United States* v. *Pelzer*, 312 U. S. 399.

Section 502 (a), *supra*, "neither says nor implies that the determination of" what is interest thereunder is to be controlled by state law. "For the purpose of applying this section * * *, the Act of Congress has its own criteria, irrespective of any particular characterization" (*Burnet* v. *Harmel, supra*) by the law of New York. Furthermore, it may be said that whether the gain of petitioner represented by the percentages paid it on redemption of its tax lien certificates constitutes interest should not be decided in one way in the case of a taxpayer receiving such percentages even if they were designated as interest under the law of New York, and in another way in the case of a taxpayer receiving percentages under the law of another state which may designate the percentages as penalties, as the laws of some of the states do. Cf. *Lyeth* v. *Hoey, supra*.

*Kieselbach* v. *Commissioner*, 317 U. S. 399, cited by respondent in support of his contention that the state law controls as to what constitutes interest under section 502 (a), *supra*, is not in point. The issue in that case was whether an amount computed as interest on a condemnation award under the provision of the charter of Greater New York designating the amount as "interest" was capital gain or ordinary income. The definition of interest as relating to personal holding company income was not involved and nothing was even decided as to the meaning of the word as used under the general definition of "gross income" which was there involved, the Court stating: "In any event, the question here is not whether these sums are interest. They may not be interest and yet be other than part of the sale price."

We shall now consider the crucial question presented by the first issue; i. e., whether on redemption of its tax lien certificates the gains realized by petitioner which are comprised of certain percentages of the amounts paid by it for the certificates come within the meaning of the word "interest" as used in section 502 (a), *supra*, and without regard to the New York law.

Interest is defined as "The price or rate of premium per unit of time that is paid by a borrower for the use of what he borrows; specif., a rate per cent of money paid for the use of money or the forbearance of demanding payment of a debt." Webster's New International Dictionary. "Congress apparently used the word in its usual and commonly accepted sense, *DeGanay* v. *Lederer*, 250 U. S. 376, and there is nothing in the legislative history to indicate that it was to be construed otherwise." *Elverson Corporation*, 40 B. T. A. 615, 644; affd., 122 Fed. (2d) 295.

In *New York* v. *Jersawit*, 263 U. S. 493, the State of New York filed a claim against the estate of a bankrupt domestic corporation for an annual tax laid by a New York statute on the corporation for

the privilege of exercising its franchise in the state, and for interest on the tax in the total amount of certain per centums named in the statute. Prior to becoming a bankrupt the corporation had exercised its privilege for somewhat less than two months and the annual tax therefor had become payable in advance for the year beginning on November 1, 1920, and remained unpaid on January 1, 1921. The statute under which the tax was laid provided that if the tax was not paid on or before January 1 of each year after it was payable on November 1 of the preceding year the corporation liable should pay "in addition to the amount of such tax,   *   *   *   ten per centum of such amount, plus one per centum for each month the tax   *   *   *   remains unpaid."

Since under the provisions of the Bankruptcy Act interest on a claim for a debt, such as that filed by the state for the annual tax, was allowable against the estate of a bankrupt, while a penalty thereon was not, and since the claim of the state included in addition all the per centums charged by the statute for failure to pay the tax by January 1, 1921, as well as the tax itself, a question presented was whether those per centums, or any part thereof, constituted interest. In deciding that none of the per centums was interest the Court said:

> There can be no doubt that the additional ten per centum charged for failure to pay by January 1 is a penalty, disallowed by the Bankruptcy Act, § 57j, but it is urged that the one per centum for each month of default is statutory interest and that the State is entitled to that and otherwise would be entitled to none. As the one per centum is more than the value of the use of the money and is added by the statute to the ten to make a single sum it must be treated as part of one corpus and must fall with that.

It is to be noted that the "additional ten per centum charged for failure to pay by January 1," referred to in the above quotation is not denominated in the New York statute to be a "penalty," as the Court held it to be, but the statute merely provided that such per centum should be paid "in addition to the amount of such tax." From this it would seem that the Court, while assigning no special reason for its holding, had in mind as the basis for such holding the principle, perhaps deemed so elementary as to need no statement, that the immediate addition on January 1 of the "ten per centum" to the amount of the tax was computed "without reference to lapse of time." That such was the basis of the holding is clearly recognized in *Meilink* v. *Unemployment Commission*, 314 U. S. 564. There the question was whether 12 percent per annum on the amount of certain contributions required by a California statute to be made by an employer to the commission, for which contributions the bankrupt was indebted to the commission, was interest allowable as a priority claim of the commission against the estate of a bankrupt. The California statute provided that an employer who failed to make payment of the contributions required

of him by the act "shall become additionally liable for interest on such payments at the rate of twelve per cent per annum from the date such payment becomes due \* \* \*." In holding that the "twelve per cent per annum" was interest allowable as a claim against the bankrupt, the Court distinguished the *Jersawit* case, in one among several respects, by saying: "Here the exaction computed according to the lapse of time is not lumped together with another percentage computed without reference to lapse of time"; thus recognizing that the holding in the *Jersawit* case, that "the additional ten per centum charged for failure to pay by January 1 is a penalty," rested upon the principle that in order for a percentage on a principal sum stated in a statute to constitute interest it must appear from the statute that such percentage is to be "computed according to lapse of time." See also *United States* v. *Childs*, 266 U. S. 304, 308.

In *District Bond Co.*, 1 T. C. 837, the taxpayer owned municipal bonds which, in conformity with the California Improvement Act under which they were issued, contained a provision that in the case of any default in the payment of principal or interest "there shall be immediately added to such defaulted amount, five per cent of the amount thereof, and on the first day of each month following such default there shall be added a further penalty of one per cent of such defaulted amount." Of the 5 percent, 2½ percent was to go to the bondholder and 2½ percent to the city. Each bond provided that in case of default the holder would be entitled to have the parcel of land securing the bond advertised and sold as provided by law. A question presented was whether the 2½ percent received by the taxpayer on defaulted amounts under the quoted provision constituted tax exempt interest upon the obligations of a state or its political subdivisions. In deciding that such 2½ percent did not constitute interest, we said, after stating that the 2½ percent which went to the city was not interest:

The 5 percent penalty that was added immediately to defaulted amounts not only is designated a penalty in the bonds and statute, but lacks the usual characteristics of interest. \* \* \* Moreover, the full 5 percent is a "fixed *ad valorem* amount taking no account of time," *Meilink* v. *Unemployment Reserves Commission*, 314 U. S. 564, payable in full though the default be cured the following day.

The New York statutes applying to tax sales in Nassau and Suffolk Counties, redemptions from which are made within a six-month period, provide that the amount paid for a tax lien certificate "shall carry and bear the maximum interest and penalties as follows: \* \* \* per centum on the purchase price if redeemed within six months of date of sale," the "maximum interest and penalties" mentioned being 10 percent in Nassau County and 6 percent in Suffolk County. It is obvious that the effect of the terms of those statutes, i. e.,

"if redeemed within six months of the date of sale," is that even if on the next day after the sale of a tax lien certificate the property covered thereby is redeemed the full amount of the maximum percentages of 10 percent in the case of Nassau County and 6 percent in the case of Suffolk County, or the full amount of a lower percentage if the bid for the certificate carried such lower rate, would be immediately added to the amount paid for the certificate, and a party redeeming would be compelled to pay such total amount if redemption occurred the next day after the sale of the certificate. The same New York statutes provide, with reference to redemptions made after the expiration of the six-month period, that the amount paid for a tax lien certificate "shall carry and bear the maximum interest and penalties as follows: * * * an additional * * * per centum on the purchase price if redeemed after the expiration of six months and within twelve months of the date of sale," the additional per centum mentioned being 10 percent in Nassau County and 6 percent in Suffolk County. The statutes also provide for similar additional percentages after the expiration of each succeeding six-month period until four years have expired. It is clear that the effect of these provisions is that on the next day after the expiration of any six-month period there would immediately accrue an additional percentage of 10 percent in the case of certificates purchased in Nassau County and an additional percentage of 6 percent in the case of certificates purchased in Suffolk County, or an additional lower percentage if the bid for a certificate carried such lower percentage, and that it would be necessary for a party redeeming on that day to pay such additional percentages.

In view of the authorities cited, and assuming, but not deciding, that the tax lien certificates represented an indebtedness upon which interest could be imposed, the effect of the New York statutes as to Nassau and Suffolk Counties is, in our opinion, that the percentages fixed therein, although denominated "interest and penalties," are in reality merely amounts "in addition to" the principal due, as in the New York statute considered in the *Jersawit* case, and "added immediately to" the principal due as in the bond and California statute considered in the *District Bond* case, and that they do not constitute interest, but penalties, as did amounts in question in those two cases; and this because such "interest and penalties" in the statutes relating to Nassau and Suffolk Counties constitute a "fixed *ad valorem* amount taking no account of time" rather than "interest which does depend on time," and are to be computed "without reference to the lapse of time." *Meilink* v. *Unemployment Commission, supra.*

The fact that the statutes relating to Nassau and Suffolk Counties denominate the "per centum on the purchase price" as "interest and penalties" is not controlling as to the character of that per centum.

*United States* v. *La Franca*, 282 U. S. 568, 572; *In re J. Menist & Co.*, 290 Fed. 947, 949; *In re Ashland, Emery & Corundum Co.*, 229 Fed. 829. The principle is concisely expressed as follows in *Menist & Co.*, *supra*, reversed in *United States* v. *Childs*, *supra*, but without the principle being questioned:

> It is a matter almost too plain to require citation that an exaction may be a penalty without being called by that name. *Fontenot* v. *Accardo*, * * * 278 Fed. 871, at page 874. The question is often one of degree, for no one would doubt that, if the statutory rate for withholding a tax was 1 per cent. a day, the requirement would be treated as a penalty.

The New York statute applying to sales in Monroe County provides that "the purchasers at such sale shall pay the amounts of their respective bids to the said treasurer immediately after the sale and after such payments have been made the said treasurer shall add a penalty of ten per centum thereto for the benefit of the said purchaser, and shall give the purchaser * * * a certificate describing * * * the sum paid and the penalty attached thereto." The statute further provides that redemption may be made either (1) within two years by paying, in addition to the bid price and the 10 percent penalty, "interest thereon at the rate of ten per cent per annum from the date of such sale," or (2) at any time *after the expiration* of the two-year period and before proceedings are instituted by the purchaser to obtain possession of and title to the land, by paying "the consideration money with the addition of thirty-five per centum thereon * * * "

Under the terms of the statute providing for redemption within the two-year period, the 10 percent immediately added to the cost of the certificate is not a "penalty" merely because so designated by the statute, but is a "penalty," rather than "interest," because it is a flat *ad valorem* addition to the cost of the certificates computed without reference to lapse of time, a principle discussed above in connection with redemptions in Nassau and Suffolk Counties. *New York* v. *Jersawit, supra; Meilink* v. *Unemployment Commission, supra*. Even if redemption is not made until the last day of the two-year period, and it be assumed that the "ten per centum per annum from the date of such sale" required by the statute to be paid, in addition to the purchase price of the certificates and the 10 percent penalty, is in fact "interest" for the purposes of personal holding company income classification, it is apparent that any income petitioner may have derived from Monroe County redemptions, if any, within the two-year period would have been derived from the 10 percent "penalty" and "interest" of not more than 10 percent per year for two years, or 20 percent interest for the two-year period. As this "interest" is calculated on the cost of the certificate plus the 10 percent penalty, the income resulting from such interest for two years would actually amount to 22 percent of the cost

of the certificate. Such total income derived from "penalties" and "interest" would thus consist of $1\%_{32}$ "penalty" in either and both of the taxable years involved and $2\%_{32}$ "interest," or less than 69 percent interest of any gains or gross income realized by petitioner on redemptions, if any, within two years of its certificates in Monroe County.

Under the terms of the statute providing for redemption in Monroe County after the expiration of the two-year period and at the beginning of the three-year period there is immediately added to "the consideration money" paid for the tax certificate "thirty-five per centum thereon." Up to the time of the expiration of the two years only 20 percent interest would have been added to such consideration money plus the 10 percent penalty. It is thus apparent that immediately upon the expiration of the two-year period and immediately upon the commencement of the three-year period 15 percent would be added to the amount paid for a tax lien certificate and, as we have held with regard to Nassau and Suffolk Counties and for the same reasons, this would not constitute interest, but a penalty. It would thus seem to be clear that as to the 35 percent added to the cost of a tax lien certificate immediately after the expiration of two years, not more than 20 percent could possibly be said to constitute interest at 10 percent per annum for the two-year period. Consequently not more than $2\%_{35}$, or approximately 57.1 plus percent, of any gains or gross income received by petitioner from any such redemptions, if any, in Monroe County could have been or was derived, after the expiration of the two-year period, from interest.

It is shown that the excess of the amounts received by petitioner from redemptions in the three counties above what it had paid for the tax liens comprised over 94 percent of its gross income for the fiscal year ended January 31, 1940, and over 99 percent thereof for the fiscal year ended January 31, 1941. It therefore appears that less than 6 percent of petitioner's total gross income for the fiscal year ended January 31, 1940, and less than 1 percent of such income for the fiscal year ended January 31, 1941, was derived from sources other than gains on redemptions of tax lien certificates in Nassau, Suffolk, and Monroe Counties. The record does not disclose whether or not this other income constituted interest. If all the other income did constitute interest and the less than 6 percent comprising same in the fiscal year ended January 31, 1940, was added to the less than 69 percent of gross income realized by petitioner from redemptions in Monroe County within the two-year period, the percentage of interest to petitioner's gross income so computed would be no more than between 74 and 75 percent. If all the other income constituted interest and the less than 6 percent comprising same in the fiscal year ended January 31, 1940, was added to the 57.1 plus percent of gross income realized from re-

demptions in Monroe County made after the expiration of the two-year period, the percentage of interest to petitioner's gross income so computed would not exceed 63 plus percent.

The ratio of interest to gross income from the two sources would be correspondingly less in the fiscal year ended January 31, 1941, when all the other income was less than 1 percent of petitioner's total gross income. The ratios of interest to petitioner's gross income received from redemptions in Monroe County plus the less than 6 percent or less than 1 percent, as the case might be, received from sources other than from redemptions in the three counties, is obviously less than would be the ratio of the aggregate of those two items to the total gross income of petitioner, since the record discloses that there was gross income from Nassau and Suffolk Counties and, as we have held, none of it was interest. But, since the record does not disclose the amount of gains of petitioner on redemptions in Nassau and Suffolk Counties, we are unable to determine the exact extent to which the less than 69 percent or the 57.1 plus percent would be so reduced. However, it is clear from what is said above that in no event could the percentages of interest of petitioner's total gross income amount to the minimum percentage requisite for classification of petitioner as a personal holding company under section 501 (a) (1), *supra*. We therefore hold that respondent erred in his determination that petitioner is liable for the surtax involved. Having so held, it follows that petitioner is not liable for the 25 percent addition to tax imposed by sections 291 and 508 of the Internal Revenue Code for failure to file a personal holding company tax return. *Elverson Corporation, supra*.

The next issue presented is whether petitioner is entitled to deduct for the fiscal year ended January 31, 1941, the amount of $11,001.79 as a loss on the real estate generally described in our findings and claimed by petitioner to have become worthless and to have been abandoned by it in that year.

Respondent in his deficiency notice disallowed the amount of $11,001.79 of petitioner's claimed loss on the ground that the real estate was "not determined worthless" and on brief contends that the disallowance was proper because "the evidence is not convincing that all value of the real property * * * was extinguished during the taxable year in question." Respondent makes no suggestion that the properties *became* worthless in a year prior to the taxable year; but bases his contention entirely upon the claimed fact that the properties *were not* worthless in the taxable year; and there is nothing in the record showing that the properties became worthless in a prior year. Respondent concedes on brief that tax liens in favor of the city of Yonkers were existing against the property during the tax-

able year and that there "was no great disparity between the admitted value of the petitioner's property and the amount of tax arrears due on the property," but argues that "there is no evidence of record which shows that the value of the property in question may not increase in value at some future date."

In our findings we have set forth the market values of the respective properties in January 1941 as well as the fact that taxes were delinquent on such properties for three years, and from those facts it appears that the delinquent taxes at that time which constituted a lien against the Lawrence Park and Valley Farms properties were in amounts largely in excess of their respective market values.

We have also found that in January 1941 the properties here involved were abandoned by petitioner.

From these facts and all facts of record, we conclude, and hold, that the Lawrence Park and Valley Farms properties became worthless in the fiscal year ended January 31, 1941, and that the petitioner sustained a deductible loss thereon in that year in the amount of the cost to it of such properties.

In *Helvering* v. *Gordon*, 134 Fed. (2d) 685, affirming 46 B. T. A. 1201, practically the same contention was made by the Commissioner with reference to whether or not the real estate there involved became worthless in the taxable year as is made here by respondent. There the amount of delinquent taxes on the property involved exceeded the value of the property, as is the case here with reference to the Lawrence Park and Valley Farms properties. The court, in holding the real estate there involved to have become worthless in the taxable year, said with reference to Commissioner's contention:

But, we are told that "real estate always has potential value and so long as a taxpayer retains title to such property he is in a position to profit from future favorable developments." Assuming the truth of this assertion with respect to an unencumbered interest in land, it cannot stand the practical or realistic test which is met when the interest is subject to superior liens or encumbrances that exceed its real value. In such a case the value of the equity is extinguished as effectually as the interest which a stockholder retains who holds title to shares in an insolvent corporation that has no reasonable expectation of recovery. In one case, as in the other, the loss has taken place and the retention of the bare legal title becomes a circumstance without significance that should not prevent the taxpayer from taking the deduction in the year in which the loss occurs or permit him to postpone it at will to some later year when it will produce a larger reduction of tax liability.

The court cited, as supporting its view as above expressed, *Denman* v. *Brumback*, 58 Fed. (2d) 128; *Rhodes* v. *Commissioner*, 100 Fed. (2d) 966; *Bickerstaff* v. *Commissioner*, 128 Fed. (2d) 366; *Commissioner* v. *Hoffman*, 117 Fed. (2d) 987; and *Commissioner* v. *Peterman*, 118 Fed. (2d) 973; and distinguished *Commissioner* v. *McCarthy*, 129 Fed. (2d) 84, cited here by respondent.

We are not able to reach the same conclusion with regard to items 5358 and 5365 as that rendered with regard to the Lawrence Park and Valley Farms properties, for the reason that, while it is shown that three years' taxes on those items had accrued in January 1941, the amounts of such taxes are not shown. We are thus left uninformed as to a factor vital to a proper determination of whether or not those items became worthless in the taxable year, and therefore approve the determination of respondent with reference to them.

Reviewed by the Court.

> *Decision will be entered for the petitioner in Docket No. 110381, and in Docket No. 112302 decision will be entered under Rule 50.*

MURDOCK and TURNER, *JJ.*, dissenting: We think that in all instances a part of the petitioner's recovery was interest for present purposes.