Arthur Clarence Erwin v. Commissioner. Harriette Erwin v. Commissioner.
Erwin v. Commissioner
Docket Nos. 5427, 5428.
United States Tax Court
1945 Tax Ct. Memo LEXIS 242; 4 T.C.M. (CCH) 398; T.C.M. (RIA) 45121; April 11, 1945
Fred F. Morgan, C.P.A., 809 Driscoll Bldg., Corpus Christi, Texas, for the petitioners. D. Louis Bergeron, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: Respondent has determined a deficiency in the income tax liability of each petitioner for the year 1941 as follows: Docket No. 5427, Arthur C. Erwin, $696.21; Docket No. 5428, Harriette Erwin, $715.70. A deduction of $6,212.60, taken as payment of interest on indebtedness, was disallowed. The question presented is whether the payment was interest within the meaning of section 23 (b) of the Internal Revenue Code. The returns were filed with the collector for the first district of Texas. Findings of Fact Petitioners, husband wife, reside in Corpus Christi. They filed *243 separate returns on a cash basis in which they reported community income. Arthur C. Erwin is referred to hereinafter as the petitioner. Petitioner began the construction of a costly residence in July 1937. From July 1937 until April 1938 he had an open account with Kaffie Lumber & Building Co. of Corpus Christi. Harold Kaffie, one of the partners of Kaffie Company, knew petitioner very well and had received other business from petitioner. Petitioner had been very successful in the oil business and his credit standing was such that the Kaffie Co. carried the open account in a high amount over the period in question. During the period Kaffie Co. sold petitioner materials from its own yards and supplies in the total amount of $23,214.80; and paid invoices, freight charges, and pay roll costs, in connection with the construction of petitioner's residence, in the total amount of $47,777.29. The open account ended on April 6, 1938, when the job was finished. At that time petitioner was unable to pay the total sum due Kaffie Co. $70,992. He gave the company his note in that amount, and the account was closed out with the note. Petitioner paid Kaffie Co. $70,992 on August 4, 1941, the face *244 amount of the note. When petitioner gave the note, Kaffie Co. agreed that it would not charge petitioner any interest on the face amount of the note, and that agreement was kept. Petitioner did not pay any interest on the note. Certain materials were required in the construction of the residence, such as stone, tile, steel, ornamental iron pieces, glass, plants, and plumbing supplies, which were not sold by Kaffie Co. Also, there was a payroll to be paid during the period. For convenience, and because it was a customary practice, and because petitioner ran short of cash, Kaffie Co. agreed to pay the invoices for orders placed with various supply concerns, quarries and nurseries, and to pay freight charges for delivery of materials to the construction, and to pay certain persons on the payroll. The materials were shipped straight to the job and Kaffie Co. arranged for having the shipments unloaded onto trucks. Invoices and bills were presented to Kaffie Co., and it paid them. Harold Kaffle made the arrangement with petitioner, and told him that a charge of 5 or 15 percent would be made by the company for paying such invoices, bills, and payrolls. In other words, it was understood *245 that petitioner's open account would be charged with the cost of such items, plus 5 or 15 percent. No such charges above cost were charged for materials sold to petitioner by Kaffle Co. out of its own yards and inventories. Pursuant to the agreement Kaffle Co. paid items of the type described above, and petitioner's open account was charged with the cost of such items plus 5 or 15 percent of the cost. Entries in the account showed both the total charge and the cost and extra charge for each item. The total of the bills paid in this manner was $47,777.29, which included percentage charges in the total sum of $6,212.60. The arrangement which Kaffie Co. made with petitioner was a customary one, and identical arrangements were made from time to time with other customers. Kaffie Co. did not call the percentage charges "interest", and did not regard them as "interest" charges. Its overhead was 15 percent, and if it handles materials for a customer which are purchased elsewhere, it is customary for it to charge its customers 5 to 15 percent depending on how promptly the customer intends paying Kaffie Co. The charge is for handling the invoices, paying them, and running them through the *246 books and accounts of Kaffie Co. The phrase "handling an invoice" is customary in the business, and it means making payment of the invoice. The percentage charge is made for paying the invoice. The sum of $6,212.60, included in the total of petitioner's open account with Kaffie Co., was not interest. From the inception of the open account until the account was closed by the note, Kaffie Co. did not charge petitoner interest. The payment of $6,212.60 was not payment of interest on indebtedness. Opinion Section 23 (b) of the Internal Revenue Code provides that there shall be allowed as a deduction interest paid within the taxable year on indebtedness. Respondent has determined that the amount which petitioner claims was paid as interest, was not interest within the meaning of section 23 (b). Respondent's determination must be sustained. The percentage charges were handling charges. They were ad valorem additions to cost computed without reference to lapse of time. Harold Kaffie testified that the handling charge was 5 or 10 percent depending on how promptly the payment of an account by a customer was expected, but he also testified, categorically, that *247 the charge was not interest. Kaffie Co. charged petitioner 5 percent handling charge for a few freight costs, and 15 percent for all the other items, which were in the majority, such as payment of invoices and payroll costs. The charge was made when an item was paid by Kaffie Co. It was not computed with reference to any time period. The items were paid by Kaffie Co. and the open account was charged at once for the cost plus the handling charge. These charges were made throughout a period commencing on August 17, 1937 and ending on April 1, 1938. When petitioner gave the Company his note for $70,992 on April 6, 1938, he wrote on the note that it would be paid "on or before two years after date." Thus, the handling charges were not computed with reference to any period of time, as interest payments on indebtedness are computed. Petitioner had to pay the flat ad valorem handling charge even if he paid his account with Kaffie Co. immediately, or at any time after his open account became due and payable. The term interest is commonly understood to mean the price per unit of time that is paid by a borrower for the use of money or the forbearance of demanding payment of a debt. See Intercounty Operating Corporation, 4 T.C. 55, 62, 63, 64, *248 and cases cited therein. The payments in question were not "interest" in the commonly understood sense of the term, which is the sense in which Congress used the term in section 23 (b). De Ganay v. Lederer, 250 U.S. 376; Elverson Corporation, 40 B.T.A. 615, 644; affirmed 122 Fed. (2d) 295; Old Colony Railroad Co. v. Commissioner, 284 U.S. 552. See also, Deputy v. Du Pont, 308 U.S. 438, 498, where it was said, "* * * an obligation is not necessary [sic] an 'indebtedness' within the meaning of section 23 (b). Nor are all carrying charges "interest." (Italics added.) The construction which petitioner has placed upon the handling charges in question was not in accordance with Harold Kaffie's understanding of their nature. He did not understand that these customary "handling charges", well understood in his business, were "interest", as that term is commonly understood. Upon the evidence it has been found as a fact that the $6,212.60 was not interest on indebtedness. Respondent's determination is sustained. Decision will be entered for respondent.