LUCILLA DE V. WHITMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 15379. Promulgated March 9, 1949.

*Watson Washburn, Esq.,* for the petitioner.
*Sheldon V. Ekman, Esq.,* for the respondent.

328

OPINION.

HILL, *Judge*: The principal question in this case is whether section 107 of the Internal Revenue Code, as amended,[1] was applicable to the salary of $20,000 received by petitioner from Countess Mara, Inc., in 1943. If so, we must then decide whether compensation allocated to a prior year under section 107 is subject to the forgiveness features of the Current Tax Payment Act of 1943. A final question for decision is whether petitioner was entitled to deduct $356.35 she paid the State of New York as income tax in computing her victory tax net income for 1943.

On her tax return for 1943 petitioner claimed that the $20,000 salary paid her that year was in compensation for services rendered from December 1, 1938, through November 30, 1943, and allocated this amount over the 5-year period as permitted under section 107 (a). In his notice of deficiency respondent determined the 1943 salary did not come within the terms of this statute.

In weighing petitioner's contention that her 1943 salary meets the requisites of section 107 (a), we were mindful that it is an exemption statute and she must bring herself squarely within its terms. *Smart v. Commissioner*, 152 Fed. (2d) 333, 335; *Lindstrom v. Commissioner*, 149 Fed. (2d) 344, 346. In the light of all the evidence, we found as a fact that the 1943 salary constituted compensation for services rendered in that year alone. Thus, the statutory requirement that the

---

[1] SEC. 139 [Revenue Act of 1942]. COMPENSATION FOR SERVICES RENDERED FOR A PERIOD OF THIRTY-SIX MONTHS OR MORE.

(a) Section 107 is amended to read as follows :

"SEC. 107. COMPENSATION FOR SERVICES RENDERED FOR A PERIOD OF THIRTY-SIX MONTHS OR MORE.

"(a) PERSONAL SERVICES.—If at least 80 per centum of the total compensation for personal services covering a period of thirty-six calendar months or more (from the beginning to the completion of such services) is received or accrued in one taxable year by an individual or a partnership, the tax attributable to any part thereof which is included in the gross income of any individual shall not be greater than the aggregate of the taxes attributable to such part had it been included in the gross income of such individual ratably over that part of the period which precedes the date of such receipt or accrual."

\*        \*        \*        \*        \*        \*        \*

(b) The amendment made by subsection (a) shall be applicable to taxable years beginning after December 31, 1940, but with respect to a taxable year beginning after December 31, 1940, and not beginning after December 31, 1941, the period specified in such subsection shall be sixty months in lieu of thirty-six months, and the percentage specified in such subsection shall be 75 per centum in lieu of 80 per centum.

services cover a period of at least 36 months is not fulfilled. Furthermore, assuming that the $20,000 was for services over a 5-year period, petitioner still fails to qualify under section 107 (a), for less than 80 per cent of the total compensation was paid in any one taxable year.

Petitioner's testimony that at the meeting of the board of directors on November 30, 1943, she insisted on getting substantial recompense for the past five years' work, the resolution passed by the board at that meeting, and petitioner's 1943 tax return constituted evidence supporting petitioner's contention that the $20,000 was paid her for services rendered over a 5-year period. Because of their self-serving nature, we can not give great weight to petitioner's testimony or return. The recital in the resolution is also subject to close scrutiny due to the fact that the beneficiary of the resolution was largely in control of the corporation and thus in a position to dictate its terms to satisfy her own tax needs. Compliance on paper with factual prerequisites for invoking a statute can not serve to bring petitioner within its provisions where actual circumstances fail to corroborate statements made therein. Such is the situation here.

If the $20,000 was actually compensation for five years' services, it is difficult to understand why the corporation would anticipate that the Salary Stabilization Unit might disallow a portion of it as excessive. Yet an oral agreement at the time the salary was voted was based on just such a contingency. Such a possibility is conceivable only if the salary was compensation for one year's work.

The petitioner's relationship to Countess Mara, Inc., prior to November 30, 1943, refutes her proposition that salary paid her in that year covered services performed over the previous five years. Certainly there is no evidence of any obligation, express or implied, on the corporation's part to pay her further compensation for work performed from 1938 through 1942. When petitioner commenced to perform her duties for the corporation in 1938, no understanding was reached concerning salary. Thereafter, on the intermittent occasions when petitioner received compensation for her services there was no express agreement that she would receive additional pay for such work at a future date. In fact, petitioner alone determined what salary she would take during these years and the record reveals no claim on her part to further compensation for her past services.

Furthermore, it is difficult to imply any agreement that petitioner should receive the value of her services over these early years. The very manner in which she explained those payments she decided to take from the corporation negates this. She testified that she asked for money only when necessary to pay rent and eat, and that often when the corporation was hard pressed she treated these sums as in

repayment of her loans rather than as salary. The findings of fact eloquently show that petitioner was no mere employee of Countess Mara, Inc., but financed and managed the corporation in the manner of a sole proprietor in the formative years. She worked night and day to the limit of her resources and skill to make her business enterprise a going concern. At the initial stage of the corporation's existence it was struggling to stay in operation, as evidenced by its early losses and subsequent scanty net income. It is only logical to conclude that as a substantial owner petitioner was willing to work for almost nothing at first in order to later reap the full fruits of eventual success. Since it was her corporation and her money staked therein, she naturally did not expect a fixed salary equal to the value of her services until Countess Mara, Inc., was financially strong enough to pay such amounts.

Events subsequent to November 30, 1943, also point strongly to the conclusion that the 1943 salary was in compensation only for services rendered that year. It is notable that the entries on the corporate books recording the 1943 salary payment do not reflect in any way the alleged retroactivity of the $20,000. Likewise the corporate tax return for the fiscal year 1943 makes no mention that the salary was in compensation for five years' work, despite the obvious advantage of claiming this to insure the deductibility of the full amount as a reasonable business expense.

The $25,000 salary paid to petitioner in 1944 is strong evidence that in 1943 for the first time the corporation undertook to pay her a fixed salary substantially worth the value of her services. It is conceded that the 1944 salary was paid for services rendered in that year only. The facts show her duties in 1943 and 1944 were virtually the same. If petitioner was worth $25,000 to the corporation in 1944, it is not logical that the $20,000 received at the end of 1943 was to compensate for five previous years of service rather than one.

The manner in which petitioner's 1943 salary was treated in the corporation's application to the Salary Stabilization Unit in 1945 and the subsequent agreement reached in the same year is inconsistent with the corporation's resolution of November 1943. In the "Employer's Application for Approval of Salary Adjustment" dated June 26, 1945, the corporation recites in the compensation tables that petitioner's annual basic salary rate for 1943 was $20,000 and her annual basic salary rate for 1938 through 1942 is stated to be zero. No mention of retroactivity of the $20,000 is made. Surely if the 1943 salary was intended to cover services from December 1, 1938, through November 30, 1943, the application would have stressed this point, since a $20,000 salary covering a five-year period would have been much more readily approved than such a salary covering twelve months.

While it is true that, in justifying her 1943 salary mention is made that this rate reflects lack of compensation in earlier years, yet the whole emphasis is centered on proving her services in 1943 were fully worth the $20,000 paid by the corporation. The application specifically states that in 1943 the corporation "was in a position to and did for the first time fix a salary for Mrs. Whitman commensurate with her talent of $20,000 for that year." This statement is understandable in view of the corporation's desire to justify the $25,000 paid petitioner in 1944 for services which were almost identical with those performed in 1943.

The final agreement between Countess Mara, Inc., and the Salary Stabilization Unit is even more damaging to petitioner's cause. It recites in part that "the salary rate of Lucilla Whitman, President and Treasurer, was fixed at $20,000 per annum effective December 1, 1942 * * *." No mention whatsoever is made that this salary reflected compensation for services rendered in prior years. Had the Salary Stabilization Unit understood this to be true, it would hardly have determined that $5,000 of both the 1943 and 1944 salary was excessive.

We thus conclude that the 1943 salary was for services performed in that year alone and petitioner thus fails to satisfy this requirement of section 107 (a) that the services cover a period of at least 36 months.

Even assuming that the 1943 salary covered services rendered from December 1, 1938, through November 30, 1943, yet the further requirement of section 107 (a) that at least 80 per cent of the total compensation be received in one taxable year is not met.

We found as a fact that petitioner received a salary of $20,000 in 1943. It is unnecessary to advert to the evidence on this point, since the petitioner on brief concedes that such salary was $20,000. Thus we must inquire whether the $20,000 so received in 1943 was at least 80 per cent of the total compensation paid her for services from 1938 through 1943. What other compensation for her services was paid during this period? We found the facts supported her contention that payments totaling $900 in both 1940 and 1942 were repayments of loans made by her to the corporation, that the $800 she returned as income in 1940 was profit from the sale of necktie designs to the corporation, and that $1,100 received from Countess Mara, Inc., in 1943 constituted rental payments for the use of her apartment. We may disregard all these sums, for they do not represent compensation for services.

It is conceded that petitioner received $2,900 as salary in 1941. We also found that the $525 paid her by the corporation in 1938 was compensation for services. She reported this amount as salary on her 1938 tax return, and this constitutes a damaging admission against

interest on her part. While at present she contends this sum was in repayment of a loan, yet it is significant that she never filed a claim for refund on that ground. Furthermore, the resolution of the board of directors on November 30, 1943, states that $525 paid her in 1938 was salary, despite the fact the corporation failed to deduct it as a business expense.

The most troublesome payments to classify are those amounting to $2,025 which petitioner received in the calendar year 1939. They formed a part of the $2,550 total which the corporation paid her in the fiscal year 1939. This total was entered on the corporate books in an account entitled "Mrs. Lucilla de V. Whitman," with no further designation. That this was a salary account is shown by two facts: First, when on the general journal the $2,550 was transferred to a loan payable account by a closing and adjusting entry, it expressly stated that the balance was being removed from the salary account; secondly, part of the $2,900 salary admittedly received by petitioner in 1941 was entered in the same account. As further evidence that the $2,025 was compensation for services is the fact that the corporation's original return for the fiscal year 1939 reported the total amount of $2,500 as salary. On the other hand, an amended return filed by the corporation for 1939 failed to take any deduction for salary payment and petitioner's 1939 return does not mention the $2,025. We have noted already the contradictory treatment given the $525 forming the balance of the $2,550. Due to such unexplained inconsistencies in the corporate books and the respective returns of both petitioner and Countess Mara, Inc., regarding the $2,025, we are unable to conclude that it did not represent salary, and, since petitioner has the burden of proof, we must uphold respondent's contention that it constituted compensation for services.

Adding together the salary payments of $525 in 1938, $2,025 in 1939, $2,900 in 1941, and $20,000 in 1943, we find petitioner's total compensation over the five-year period was $25,450. Petitioner thus did not receive at least 80 per cent of the total compensation in any one taxable year and fails again to qualify under section 107 (a). We therefore hold that the entire $20,000 was taxable income to petitioner in 1943.

In view of the above holding it is unnecessary to consider the applicability of the forgiveness features of the Current Tax Payment Act of 1943 to compensation allocated over prior years under section 107.

The final question is whether for the purpose of computing her victory tax net income for 1943 petitioner was entitled to deduct $356.35 paid the State of New York as income tax. We decided in *Anna Harris*, 10 T. C. 818, 827, that payment of a state income tax does not

come within the language of section 451 (a) (3) of the code [2] so as to be deductible in computing her victory tax net income. This decision governs our determination of the issue. Thus we uphold respondent's disallowance of the deduction.

*Decision will be entered for respondent.*

---

[2] SEC. 451.  VICTORY TAX NET INCOME.

(a) DEFINITION.—The term "victory tax net income" in the case of any taxable year means (except as provided in subsection (c)) the gross income for such year (not including gain from the sale or exchange of capital assets as defined in section 117, or interest allowed as a credit against net income under section 25 (a) (1) and (2), or amounts received as compensation for injury or sickness which are included in gross income by reason of the exception contained in section 22 (b) (5)) minus the sum of the following deductions:

\* \* \* \* \* \* \*

(3) TAXES.—Amounts allowable as a deduction by section 23 (c), to the extent such amounts are paid or incurred in connection with the carrying on of a trade or business, or in connection with property used in the trade or business, or in connection with property held for the production of income.