COURTLAND KELSEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 16335. Promulgated January 30, 1950.

*Courtland Kelsey, Esq., pro se.*
*Whitfield J. Collins, Esq.,* for the respondent.

OPINION.

TYSON, *Judge*: Respondent has determined against petitioner an income and victory tax deficiency of $332.71 for the calendar year 1943, only a portion of which is in controversy.

The question presented is whether respondent erred in disallowing a deduction by petitioner of New York State tax imposed upon him as a nonresident of that state in the computation of his victory tax net income.

The proceeding was submitted on the pleadings and a stipulation of facts. The facts stipulated are so found and are included herein by reference.

Petitioner is an attorney, engaged in the practice of law in New York City, but at all times pertinent here he was a resident of New Jersey. His income tax return for the calendar year 1943 was filed with the collector of internal revenue for the fifth district of New Jersey. Petitioner kept his accounts and filed his income tax return for 1943 on the cash receipts and disbursements basis.

During 1942 petitioner incurred liability for New York State tax in the amount of $2,896.94 and paid this tax in 1943. The tax was imposed with respect to petitioner's distributive share of the net income of the law firm of Simpson Thacher & Bartlett, a partnership,

totaling $62,743.12 in 1942, and his fees of $220 received as a director of Brooks Brothers in that year. In 1943 petitioner received $62,-443.30 as his distributive share of the net income of Simpson Thacher & Bartlett and $280 as his fees as a director of Brooks Brothers, thereby incurring liability for New York State income tax in the amount of $2,893.05, which he paid in 1944. In 1942 and 1943 petitioner received no other income from sources within the State of New York.

Petitioner contends that the New York State tax of $2,896.94 incurred in the year 1942 but paid in 1943 should be deductible from gross income in computing his victory tax net income for the taxable year 1943. In the alternative, he contends that the New York State tax of $2,893.05 incurred in the year 1943 but paid in 1944 should be deductible in 1943.

It is respondent's position that the tax is a state personal income tax and under no circumstances is deductible in the computation of victory tax net income, citing *Anna Harris*, 10 T. C. 818.[1] Petitioner argues that the *Harris* decision is not determinative here because that decision involved an income tax on a resident of the state, whereas the New York tax here involved is levied upon him as a nonresident and solely upon his income derived from business carried on within that state; and that the New York tax is thus a tax paid or incurred in connection with the carrying on of a trade or business within the meaning of section 451 (a) (3) of the Internal Revenue Code.[2]

As first enacted in 1919 the New York State income tax statutes[4] provided personal exemptions for residents that were not extended to nonresidents. This denial of personal exemptions to nonresidents was held to be a discrimination against them by the United States

---

[1] Reversed and remanded to Tax Court on another issue, 175 Fed. (2d) 444.

[2] Section 451 was added by section 172 (a) of the Revenue Act of 1942. Its provisions pertinent herein are as follows :

"SEC. 451. VICTORY TAX NET INCOME.

"(a) DEFINITION.—The term 'victory tax net income' in the case of any taxable year means (except as provided in subsection (c)) the gross income for such year (not including gain from the sale or exchange of capital assets as defined in section 117, or interest allowed as a credit against net income under section 25 (a) (1) and (2), or amounts received as compensation for injury or sickness which are included in gross income by reason of the exception contained in section 22 (b) (5)), minus the sum of the following deductions :

*      *      *      *      *      *      *

"(3) TAXES.—Amounts allowable as a deduction by section 23 (c), [3] to the extent such amounts are paid or incurred in connection with the carrying on of a trade or business, or in connection with property used in the trade or business, or in connection with property held for the production of income."

*      *      *      *      *      *      *

[3] The applicable provisions of section 23 are as follows :

"SEC. 23. DEDUCTIONS FROM GROSS INCOME.

"In computing net income there shall be allowed as deductions :

*      *      *      *      *      *      *

"(c) TAXES GENERALLY.—

"(1) ALLOWANCE IN GENERAL.—Taxes paid or accrued within the taxable year, except—"
(The expressly enumerated exceptions are not material here.)

[4] New York Laws 1919, ch. 627.

Supreme Court in *Travis* v. *Yale & Towne Mfg. Co.*, 252 U. S. 60, 77–82 (1919), and, as such, unconstitutional. The constitutionality of the other features of the act, in taxing nonresidents only in respect to income derived from business carried on within the state and in confining deductions of expenses, losses, etc., to such as were connected with income arising from sources within the state, was upheld under authority of *Shaffer* v. *Carter*, 252 U. S. 37 (1919), decided the same day and involving a similar state income tax statute enacted by Oklahoma.

Following the *Yale & Towne Mfg. Co.* case, the New York Legislature amended its income tax statute to grant nonresidents the same exemptions as residents.[5] Constitutionality of the act as amended was upheld by the New York Court of Appeals in *People ex. rel. Stafford* v. *Travis*, 231 N. Y. 339; 132 N. E. 109 (1921). In that case it was said, *inter alia*:

> The tax imposed by the act of 1919 upon and with respect to the net income from every business carried on in this state by persons not residents of the state is not for the privilege of carrying on a legitimate business within the boundaries of the state, for that is a privilege granted by the federal Constitution. It is the imposition of a tax upon business done by a nonresident in this state no greater in any respect than the tax imposed upon the conduct of such a business by a resident of the state. It is measured by a percentage on the net income from the business. Such a tax is just and constitutional. * * *

We have carefully examined the provisions of the New York State income tax statutes [6] as in effect for the tax years here involved, and the conclusion is inescapable that the tax is designed to, and does, tax the personal income of residents and nonresidents of that state within constitutional bounds. Those statutes are in pertinent parts substantially identical with those considered in the *People ex. rel. Stafford* v. *Travis* case, *supra*, and some are set forth in a footnote below.[7]

---

[5] New York Laws 1920, ch. 191.

[6] McKinney's Consol. Laws of New York Ann., book 59, part 2, Tax Law, art. 16.

[7] ARTICLE 16—TAXES UPON AND WITH RESPECT TO PERSONAL INCOMES.

* * * * * * *

SEC. 351. Imposition of income tax on net incomes and net capital gains.

A tax is hereby imposed upon every resident of the state, * * * with respect to his entire net income * * *. A like tax is hereby imposed and shall be levied, collected and paid annually, at the rates specified in this section, upon and with respect to the entire net income and net capital gain as herein defined, except as hereinafter provided, from all property owned and from every business, trade, profession or occupation carried on in this state by natural persons not residents of the state. * * *

SEC. 351–a. Reimposition of tax against nonresidents.

The tax provided for in section three hundred and fifty-one of this chapter, upon and with respect to income derived from all property owned and from every business, trade, profession or occupation carried on in this state by natural persons not residents of the state, is hereby reimposed * * *

SEC. 359. Gross income defined

The term "gross income":

* * * * * * *

3. In the case of taxpayers other than residents, gross income includes only the gross income from sources within the state, but shall not include annuities, interest on bank deposits, interest on bonds, notes or other interest-bearing obligations or dividends from corporations, except to the extent to which the same shall be a part of income from any business, trade, profession or occupation carried on in this state subject to taxation under this article.

That the statutes levied a tax upon personal income (in the case of nonresidents restricted to income derived from property owned or business done within the state) is, we think, clearly shown as follows: The heading of article 16, *supra*, in which the tax is imposed is "Taxes Upon and With Respect to Personal Incomes"; section 351, *supra*, imposes a tax "upon every resident of the state, * * * with respect to his entire net income * * *" and imposes "A like tax * * * upon * * * the entire net income * * * from all property owned and from every business, * * * carried on in this state by natural persons not residents of the state"; section 351–a, *supra*, under the heading "Reimposition of tax against nonresidents," reimposes the same tax against nonresidents as that imposed by section 351; and section 359–3, *supra*, defines gross income of nonresidents to include "only the gross income from sources within the state * * *"; section 362 (which is not set out in the footnotes) provides for the allowance with respect to his net income to any taxpayer (including nonresidents of New York) of personal exemptions and exemptions for dependents in specific amounts without reference to the amount of business done in the state or of the amount of income derived therefrom; and section 363 (also not set out in the footnotes) provides that whenever a nonresident of New York has become liable for income tax to the state or country where he resides upon income derived from sources within New York subject to the New York tax he will be credited on New York tax payable by him with such proportion of the tax payable by him to the state where he resides as his income subject to taxation by New York bears to his entire income upon which the tax so payable to such other state or country was imposed; if reciprocal credit is granted New York residents.

All the above statutory provisions characterize the incidence of the tax as falling upon the personal income of the nonresident—to the extent that such income is derived from all property owned and business operated by him in the State of New York. Petitioner's argument in support of his contention that the tax was not a personal income tax, but was rather a tax "paid or incurred in connection with the carrying on of a trade or business within the meaning of Section 451 (a) (3)," *supra*, and thus deductible in computing victory tax net income, is the same argument made in support of a like contention and rejected in the *Harris* case, *supra*, which in treating of the question there involved assumed as a fact that most of the income of the taxpayer was derived from a partnership business operated in California, the state imposing the tax. We there said:

* * * Petitioners argue that the state income tax was a tax which was paid or incurred in connection with the carrying on of a business within the meaning

of section 451 (a) (3) because the income which was taxed by the state was derived from a business.

In rejecting this argument, we said:

\* \* \* The state income tax was not incurred "in connection with the carrying on of the business." Those words have a clear meaning, but, if it is necessary to undertake to clarify them, we think that the words mean a tax which is incurred as an incident to the carrying on of business in the sense that a business expense is incurred in carrying on a business; that is to say, something which must be paid in order to do business.

And we said further:

\* \* \* The crux of the matter is that the Congress did not see fit to permit deduction of state income taxes in the computation of the victory tax net income for the purpose of the victory tax.[1] We think that this is a complete answer to the petitioners' contention.

[1] See Senate Report No. 1631, 77th Cong., 2d sess. (C. B. 1942-2, p. 509), where the following is stated:

"Since the victory tax does not allow any deduction for state income taxes your Committee deemed it advisable to provide that the total income tax and victory tax should not exceed 90% of the taxpayer's net income \* \* \*."

We think the *Harris* case is controlling here notwithstanding that here the taxpayer was a nonresident of the state imposing the tax while in that case the taxpayer was a resident of the state imposing the tax; and for the reason that the crucial and wholly decisive question there was, as here, whether the tax was a personal income tax or a tax "paid or incurred in connection with the carrying on of a business within the meaning of section 451 (a) (3)," *supra*. See also *Lucilla De V. Whitman*, 12 T. C. 324; affd., 178 Fed. (2d) 913.

We conclude that the tax here involved was a personal income tax imposed by the State of New York and, following the *Harris* case, *supra*, that it was not, as contended by petitioner, paid or incurred in connection with the carrying on of a business within the meaning of section 451 (a) (3), *supra*. It is therefore not deductible in computing petitioner's victory tax net income.

Petitioner also seeks to distinguish the *Harris* case by taking the position that there, where the taxpayer was a resident of California, the court understood that the law of California imposed a personal income tax, whereas here the tax imposed on a nonresident of New York has been held by its highest court of appeals in *People ex. rel. Stafford* v. *Travis, supra*, to be "a tax upon business done by a nonresident in this state" and therefore not a personal income tax. Petitioner points to the excerpt from that case above quoted as characterizing the tax in question to have the nature of "a tax upon business done by a nonresident in this state"; and asserts that such characterization necessarily also, in effect, characterizes the tax as

having the nature of a tax "paid or incurred in connection with the carrying on of a trade or business" within the meaning of section 451 (a) (3) and that we are bound by that characterization, in applying the Federal statute involved, to hold that such was the nature of the tax, rather than to hold that its nature was that of a personal income tax. Petitioner cites no authority in support of his assertion that we are so bound, and we disagree with such assertion, since, in our opinion, such characterization by the New York court would not control our interpretation and application of the words "paid or incurred in connection with the carrying on of a trade or business" as used in section 451 (a) (3), *supra*. As was said in *Intercounty Operating Corporation*, 4 T. C. 55, 61:

> \* \* \* The well established rule applying to the interpretation of a Federal statute such as is here being considered is stated in *Burnet* v. *Harmel*, 287 U. S. 103, 110, as follows:
>
> "It is the will of Congress which controls, and the expression of its will in legislation, in the absence of language evidencing a different purpose, is to be interpreted so as to give a uniform application to a nationwide scheme of taxation. \* \* \*. State law may control only when the federal taxing act, by express language or necessary implication, makes its own operation dependent upon state law."
>
> See also *Lyeth* v. *Hoey*, 305 U. S. 188, and *United States* v. *Pelzer*, 312 U. S. 399.

Section 451 (a) (3), *supra*, neither expressly says nor implies that the determination of what constitutes amounts "paid or incurred in connection with the carrying on of a trade or business" as used in that subsection is to be controlled by state law. "For the purpose of applying this section \* \* \* the act of Congress has its own criteria, irrespective of any particular characterization" (*Burnet* v. *Harmel*, *supra*) by the law of New York. It may also be observed that for the above quoted expression from section 451 (a) (3) to be a "uniform application to a nationwide scheme of taxation," a question of its application should not be decided in one way according to the law of New York (assuming, but not deciding that the law of that state is as contended by petitioner), since the highest court of another state having statutes identical with those of New York might interpret those statutes in a way different from the interpretation of such statutes by the highest court of New York. The *Harris* case is not, as petitioner contends it is, distinguished from the instant case.

Since we hold that petitioner may not deduct the New York State income tax from gross income in computing victory tax net income, we need not decide the question of whether the deduction should be for the tax paid in the year covered by the return or for the tax accrued in that year but not paid until the following year.

*Decision will be entered under Rule 50.*