## KING vs. WHITON and another, Ex'rs.

Where a will does not devise lands to executors to sell, but gives them merely a power to sell, it would seem to follow that if the power was not pursued the sale would be void.

Perhaps the same result would follow under sec. 12, chap. 84, R. S. 1858, if the will had, in terms, the *devised* lands to the executors, with a power to sell.

Where an executor undertakes to convey lands of the testator in exchange for other lands, and the conveyance is invalid for want of power in the executor to make it, the title remains in the heirs or devisees, and the executor should not be charged with the value of the lands as assets.

An executor is entitled to compensation for his services as such, although he may not have intended to charge for the same at the time of rendering them.

One of two partners is not entitled to share in the fees received by the other as administrator of an estate, merely because that other is shown to have intended to share such fees with him.

Where executors advanced money to the widow for her support, and the amount was afterwards allowed by the probate judge in a settlement of their accounts, it was error in the circuit court, before which such settlement was. brought

June Term, 1862.

KING
v.
WHITON et al.

for review, to disallow the claim of the executors for that amount, merely on the ground that it was paid without a *previous* order of the probate court.

APPEAL from the Circuit Court for *Rock* County.

*Hannah M. King* appealed to the circuit court for Rock county from an order of the county court adjusting, on a partial settlement, the accounts of *Whiton* and *Lawrence*, as executors of the will of Chancy P. King. The matter of appeal was heard before referees. They found, as matters of fact, that at the death of the testator, he and *Whiton* owned in common equal parts of certain lands heavily encumbered, which the executors exchanged for unincumbered real estate; that the executors claimed power to make such exchange under a clause in the will, and made it in good faith, but that the will gave them no such authority. The referees therefore charged the executors with the cash value of the interest of the estate in said lands. The clause of the will referred to was as follows: "I will and direct that all my real and personal estate * * * be sold by my executors as soon after my decease as convenient * * * upon such terms as to price and time of payment as my executors shall deem for the interest of all concerned, and out of the proceeds thereof first to pay," &c., &c. They further found that " *Whiton* at first, on the accounting in the probate court, made no account for certain services or for certain moneys paid by him as executor," but subsequently, during the hearing in the probate court, brought in charges for those items. These charges they disallowed, on the ground that the services were rendered and the money paid without any intention of charging the estate for them. On this point *Mr. Whiton* testified: "When I undertook the duty of executor of the estate of Mr. King, and down to the time when the executors proposed their original account for allowance in the probate court, I had no intention to make any charge for my own personal services as executor, nor for many small items of disbursement as such; and I was induced to change that intention because an attempt was made by those disputing the allowance of my account to defraud me of a large portion of the moneys I had paid for

the benefit of the estate."—The referees also charged the executors with one half of the compensation which *Whiton* had received for services as administrator of the estate of one Sinclair, on the ground that both *Whiton* and King treated such administration as company business while King was living, and that *Mr. Whiton* so treated it after King's death. The evidence upon this subject was as follows. *Mr. Whiton* testified : " A portion of those services were rendered while I was partner with Mr. King in his life-time. The compensation was paid me after his death. I did all the business in the settlement of the Sinclair estate except the contest on the probate of the will before the probate court. King assisted in this. After I was appointed administrator, I did all the business. I had no separate book of account. It was found, when we settled with the estate, that *Whiton* & King had used about seven or eight hundred dollars belonging to the estate, and this sum was offset against my services as administrator, and there was a balance of about $43 in our favor, for which King's estate had its share of credit. I had intended that King should share equally in my services as administrator, but I did not think that he was legally entitled to them. I devoted considerable time.in attending to the business as administrator. While I was doing this, King was attending to the business of our office; and while King was attending to his private business, I was attending to the business of the firm. I always thought I did my share of the labor." He also testified that but one day book and ledger was kept in the office of *Whiton* & King, upon which his private transactions were entered together with the transactions of *Whiton* & King, and that he continued after the death of King to keep the accounts just as if King were alive and continued a partner, down to the 1st of January, 1858, when he opened a new day book and ledger. It also appeared, on inspection of the old account books, that all the charges in the matter of the administration of Sinclair's estate were minuted in the hand-writing of *Whiton*, and that a partial settlement was made with said estate by *Whiton* in July, 1857, which forms the basis of the credit given by the referees to King's estate in the accounting. *Mr. Whiton* fur-

ther testified that there was never any bargain between him and King in relation to a division of the amount to be paid him as administrator, nor any arrangement whatever between them about such a division, but that he had intended to share with King's estate the net proceeds received for such services, until he discovered what he regarded as an attempt to wrong him in the settlement of the estate, when he concluded to stand upon his strict legal rights.—The referees also refused to credit the executors with a certain sum paid by them to the widow of the testator for her support, and which had been allowed by the county judge in the settlement appealed from.

Exceptions to these several decisions were overruled by the circuit judge; from whose order the executors appealed.

*H. K. Whiton* and *J. A. Sleeper*, for appellants.
*Sloan, Patten & Bailey, contra.*

*By the Court,* PAINE, J.   However the question may be   October 11. determined, whether the executors had power, under the will, to exchange the lands of the testator as they did for other lands, or to sell them for anything but cash, we are fully satisfied that the disposition which was made, if it could be sustained, was the best that could have been made under the circumstances, and probably saved the estate from very considerable loss. But whether those exchanges can be sustained or not, we do not think it necessary to determine, as in either event the rule of accounting adopted below was erroneous.   The referees and the court below held that the exchanges were not authorized by the will, and therefore held the executors to account for the cash value of all the lands transferred or attempted to be.   Now if they were right in their legal conclusion that the will authorized sales for cash only, then, as the will does not devise the lands to the executors to sell, but gives them merely a power to sell, it would seem to follow that if the power was not pursued, the sale would be void, and no title pass. *Haskell v. House,* 3 Brevard, 242; *Patton v. Crow,* 26 Ala., 431; *Thompson et al. v. Gaillard,* 3 Rich., 418; *Fay v. Fay and others,* 1 Cush., 105; *Carrington v. Goddin,* 13 Grat., 601; *Waldron v. McComb,*

1 Hill, 111; *Same Case*, 7 Hill, 335, where the judgment of the supreme court was reversed, though the correctness of the principles asserted by it, as far as they are applicable to this case, was conceded; *Allen v. De Witt*, 3 Coms., 276; *Read v. Shaw*, 2 Sugden on Powers, Appendix No. 28. Perhaps the same result would have followed if the will had in terms devised the lands to the executors with the same powers it now contains, under the provisions of sec. 12, chap. 84, R. S. 1858. See *Germond v. Jones*, 2 Hill, 596.

The difference between a conveyance by a trustee having the legal estate, and a conveyance by one not having the legal estate, but acting under a power simply, is well stated in the case cited from Grattan. In the former case, the title passes although the conveyance is in violation of the trust— though perhaps this would not be the case, under our statute, where the trust is expressed in the instrument creating the estate. Sec. 21, chap. 84, R. S. But in the latter case, the title does not pass unless the power is pursued.

If, therefore, the executors in this case were authorized by the will to dispose of the lands as they did, all parties in interest are bound by that disposition, and the executors could only be held responsible to make a proper disposition of the consideration received. If they had no such authority, then the title remains in the heirs, undisposed of, and the executors cannot be charged, in accounting, with the cash value as assets. Real estate, as such, is not a proper item with which to charge executors in their account. If there is real estate which they ought to dispose of to pay debts, they may be compelled, by an appropriate proceeding, to dispose of it. See sec. 31, chap. 85, R. S. If they unreasonably neglect or delay to sell, and the value of the estate is thereby lessened, they may be charged with the damage. Chap. 102, sec. 8, R. S., 1858. But with this exception, they are chargable only with the personal estate, and the rents and profits, and proceeds of sales, of real estate which came into their hands. Secs. 1 and 2, chap. 102, R. S.

. We think, also, it was error to deny the executor *Whiton* the proper compensation for his services. The law declares he shall be entitled to it. He has never in any manner re-

June Term,
1862.

KING
v.
WHITON et al.

linquished the right. It was denied to him because he tes-tified that for a time he did not intend to take anything. This is not a sufficient legal ground for depriving him of compensation. It is true that if one performs service upon an express or implied understanding that he is to receive no pay, and this understanding was in whole or in part the in-ducement to his employment, he cannot afterwards claim pay. But such was not the case here. The executor was appointed to render services for which the law says he shall be entitled to be paid. His intention at one time to waive that right should not enable any one to compel him to waive it. Such intentions depend for their execution only upon the will of the party who entertains them. If the matter is brought to litigation, courts can determine only what are his legal rights, not what may have been his generous inten-tions.

The same remarks are applicable to the ruling by which the estate was allowed to share in the compensation receiv-ed by *Whiton* for his services as administrator in the Sinclair estate. There was and could be no partnership in that ad-ministration. No agreement was shown by which *Whiton* was under any obligation to allow his partner any share of his pay as administrator. It was allowed solely upon his testimony that he had intended to share it with him, though he said at the time that he did not understand that his part-ner had any legal right to it. Thus he was cut off from his pay as executor, to which he had a legal right, and the es-tate was allowed a share in his fees as administrator, to which it had no legal right, merely because he had secretly intended voluntarily to do the same thing, while he suppos-ed there was to be no litigation or dispute on the subject. Both rulings were erroneous.

It was also error to disallow the amount allowed by the county judge for the support of the widow during the set-tlement of the estate. It is not claimed that the amount was unreasonable. But it was disallowed because the payments were actually made by the executors to the widow before the county judge had made any order authorizing it. This was not a sufficient reason for rejecting it. If the executors

saw fit to make advances before an order by the county judge directing the amount, they would of course do it at their own risk. If he should afterwards disallow any portion of it, they would have to be accountable for such portion. But if the amounts advanced were reasonable, and the county judge afterwards allowed them, the fact that he did not decide upon the question until after the payments were made, is no reason why they should be disallowed entirely by the circuit court. Suppose an executor should advance a legacy before any order justifying it, but it should afterwards appear to have been properly paid, and the county judge should allow it in the account, would the circuit court be justified in disallowing it entirely because no order had been previously made? Clearly not. And the same is true of payments for the support of the widow.

This disposes of the exceptions taken by the appellants. We have not made the necessary computations to state the account in accordance with our decision, but shall leave that to be done in the court below.

The judgment is reversed, and the cause remanded with directions to re-state the account according to this opinion.