## HARTFORD NAT. BANK & TRUST CO. et al. v. UNITED STATES.

### Civ. A. No. 2974.

United States District Court
D. Connecticut.
April 22, 1952.

Charles Welles Gross, Gross, Hyde & Williams, Hartford, Conn., for plaintiffs.

James P. Garland, Sp. Asst. to the Atty. Gen., Edward J. Lonergan, Asst. U. S. Atty., District of Connecticut, Hartford, Conn., for defendant.

SMITH, District Judge.

### Findings of Fact
#### I.

The Court has jurisdiction of this cause. The Federal estate taxes in question were paid on July 29, 1946, to the Collector of Internal Revenue, Frank W. Kraemer, who was not in office at the time of the commencement of this action. A Federal estate tax return was filed on behalf of the estate of Clarence Horace Wickham on July 29, 1946, a photostatic copy of which is attached to the return as Exhibit "A". A claim for refund in the amount of $23,-934.77 was filed on October 4, 1948, a photostatic copy of which is attached to the return as Exhibit "B". A certificate of overassessment was assessed by the Commissioner of Internal Revenue in the amount of $12,683.84, and a check for that amount with interest thereon of $2,487.94 was issued to the estate. The acceptance of a refund in that amount did not prejudice the estate's right to bring the suit. Plaintiffs were informed by letter dated February 8, 1950, that to the extent the claim for refund was not allowed, the claim was disallowed and that such letter should serve as a notice thereof. The Hartford National Bank and Trust Company, one

of the plaintiffs, is a national banking association located in the City and County of Hartford, State of Connecticut, and Edith McGraft Wickham, the other plaintiff, is an inhabitant and resident of the town of Manchester, County of Hartford, State of Connecticut. Plaintiffs are the duly appointed, qualified and acting executors of decedent's estate.

## II.

Clarence Horace Wickham died a resident of Manchester, Connecticut, on July 20, 1945. A copy of decedent's will, duly admitted to probate, bearing date of August 6, 1941, is attached to the return as Exhibit "C". The will contains the following provisions:

"Sixth: * * * I direct that my executors and my trustees respectively shall, commencing immediately after my death, pay to Fannie Pember Colton, of Hartford, the sum of Five Dollars [$5.00] per week for the rest of her natural life, and to Helen Waldo Sykes, of South Coventry, Connecticut, the sum of Thirteen Dollars [$13.00] per month for the rest of her natural life.

"During the settlement of my estate such payments shall be made out of the income of the residue of my estate and after the settlement of my estate such payments shall be made out of the income of the trust estate set up in the residuary clause of my will. * * *

"Eighth: I direct that my executors and my trustees herein named shall annually for ten years from and after my death pay the sum of One Hundred Dollars [$100] to the Treasurer for the time being of The Society of the Sons of the Revolution in the State of Connecticut, or to any other officer or authorized committee of that Society, to be used and applied toward the maintenance and upkeep of the Nathan Hale Schoolhouse in East Haddam, Connecticut, and the adjoining land, as a historical monument and park. During the settlement of my estate such payments shall be made out of the income of the residue of my estate and after the settlement of my estate such payments shall be made out of the income of the trust set up in the residuary clause of this will. When ten such annual payments shall have been made this gift shall be deemed to be fully satisfied and no further payments shall be made.

"Ninth: All the rest, residue and remainder of my estate, both real and personal and wherever situated, and including any gifts herein made which may be held to have lapsed or to be void, I give, devise and bequeath *in trust* to my wife, Edith McGraft Wickham, and the Hartford National Bank and Trust Company, a national banking association located in Hartford, Connecticut, and to their successors in this trust, upon the following trusts: * * *

"[b] During the remainder of the life of my wife, Edith McGraft Wickham, I direct that said trustees shall pay over to her such portion of the net income of said trust estate from time to time as she may desire, it being my intention that all or such part of said net income as she may desire shall be paid to her for her own use. Without limiting her right to this income, it is my hope that she will not unduly accumulate income which would increase her own estate ultimately. * * * "

After the death of testator's wife the property is to become a charitable trust, all of the real estate to be held for "Wickham Park", primarily for the benefit of residents of Manchester and East Hartford, and all the income from the residue shall be used for the management and upkeep of the park and especially for the construction of structures and other improvements thereon.

Decedent was survived by his wife, Edith McGraft Wickham, who was of the age of 74 years at the date of decedent's death. Fannie Pember Colton was at the age of

72 years at the date of decedent's death. Helen Waldo Sykes was 76 years of age at the date of decedent's death.

### III.

The question in this case is whether the Commissioner of Internal Revenue properly computed a charitable deduction. As evidenced by the Federal estate tax return, the deduction was originally computed by paintiffs in the amount of $740,749.09. Upon audit of the estate tax return the Commissioner of Internal Revenue increased the allowable charitable deduction to $773,854.58 which resulted in the above-mentioned overassessment and refund of Federal estate taxes. The Commissioner of Internal Revenue arrived at that figure as follows:

| | | | |
|---|---|---|---|
| Gross estate | | | $1,338,844.29 |
| Less debts and charges | $ 41,601.01 | | |
| Transfer allowed as deduction under "J" | 1,701.21 | $ 43,302.22 | |
| Transfer | | | |
| Charitable, etc. | | 3,177.10 | |
| Insurance $27,720.00 | | 27,720.00 | |
| Joint property 7,040.49 | | 7,040.49 | |
| Non-charitable bequests: | | | |
| Par. "First" of will 87,955.18 | | 87,955.18 | |
| Remaining paragraphs of will 54,-949.00 | | 142,904.18 | |
| Total of items to which proportionate share of estate tax is chargeable | 122,715.67 | | |
| Connecticut succession taxes | $ 15,974.64 | | |
| Less amount contributed | 4,732.21 | 11,242.43 | |
| | 122,572.50 | | |
| Less amount to be contributed | 30,740.36 | 91,832.14 | |
| Annuity of $5.00 per week 52 x $5.00 x 25 x 1.0195 | | 6,626.75 | |
| Fund to pay H. W. S. Annuity 12 mos. x $13.00 x 25 x 1.0182 | | 3,970.98 | |
| Annuity of $100.00 for ten years $100.00 x 25 | | 2,500.00 | · 340,316.29 |
| Residue | | | $  998,528.00 |
| Charitable residue factor .76215 [age 74 Table A] | | | $  761,028.12 |
| Add: | | | |
| Present value of fund of $2,500.00 after period of 10 years and one life, age 74 [.65085 x 2,500.00] | | | 1,627.13 |
| Present value of fund of $6,626.75 after two lives, ages 72 and 74 [.67067 x 6,626.75] | | | 4,444.36 |
| Present value of fund of $3,970.98 after two lives, ages 76 and 74 [.69675 x 3,970.98] | | | 2,766.78 |
| Charitable transfer | | | 3,177.10 |
| Charitable annuity | | | 811.09 |
| Total charitable deduction | | | $  773,854.58 |

## IV.

Plaintiffs now contend that the charitable deduction should be allowed in the amount of $810,345.61. None of the amount sought to be recovered in this action has been refunded.

| | | |
|---|---|---|
| Corpus of residuary trust | | $1,022,876.66 |
| Edith McGraft Wickham age 74, has life interest in trust 4% x 1,022,876.66 x 5.18402 | | 212,103.70 |
| *Less* present value of other interests while she is living $100 a year for 10 years [Sons of the Revolution] 100 x 4.71239 | 471.24 | |
| $5 a week 5 x 52 x 3.37231 x 1.0195 | 893.90 | |
| $13 a month 13 x 12 x 2.94527 x 1.0182 | 467.82 | |
| | 1,832.96 | |
| Balance | 210,270.74 | |
| *Add* the present value of annuities | | |
| Fannie Pember Colton age 72 5 x 52 x 5.74003 x 1.0195 | 1,521.51 | |
| Helen Waldo Sykes age 76 13 x 12 x 4.65125 x 1.0182 | 738.80 | |
| | 2,260.31 | |
| To be deducted from gross estate | | 212,531.05 |
| Leaving the balance for charitable remainder | | $ 810,345.61 |

On those figures the plaintiffs' claim for refund was filed October 4, 1948, in the sum of $23,934.77.

On that claim for refund the government made a partial allowance under date of February 8, 1950 in the sum of $12,683.-84 and a check for that amount, with interest thereon of $2,487.94, was received, as disclosed by the stipulation of facts herein. That payment was made and accepted by the taxpayer with the understanding [quoting from the letter]:

"You may accept the check, returned herewith to you, without in any way prejudicing the estate's right to bring suit, if you so desire, for the portion of the claim disallowed."

Crediting $12,683.04 as a partial payment against the claim of $23,934.77, leaves a balance, under plaintiffs' theory due, of $11,250.93 for the amount of which plaintiffs ask judgment, with interest.

## V.

Plaintiffs figured the value of the charitable remainder by taking the value of the gross estate and deducting the value of the life interests in the following manner:

## VI.

The administrative procedure followed in this case, using remainder factors in respect to more than one life is in accord with the established administrative practice.

### Conclusions of Law

1. The Court has jurisdiction of the parties and subject matter of the action.

2. Plaintiffs have failed to establish that the Commissioner's method of computation was incorrect or unreasonable.

3. The Commissioner's method of computation is in accordance with the principles of Regulations 105, § 81.10.

4. Defendant is entitled to judgment dismissing the action.

### Discussion

The parties have stipulated the facts of this case, leaving for the Court's decision the sole question of the correctness of the

Commissioner of Internal Revenue's determination of the value of the charitable remainder.

Under the last will and testament of Clarence Horace Wickham, one trust was established from which Fannie Pember Colton was to receive $5 a week for life, Helen Waldo Sykes $13 a month for her life, the Sons of the American Revolution $100 a year for ten years, and Edith McGraft Wickham, the testator's wife, a life interest in the remainder. Upon the death of the wife, and the termination of the other intervening interests, the trust was to continue for the purpose of holding and developing Wickham Park, a use which the government concedes qualifies as a charitable bequest and, therefore, deductible from the gross estate for the purpose of computing the Federal estate tax.

The parties are at issue over the correct method of computing the present value of the charitable bequest to the Park. The government has adopted the position that it must be computed directly by the application of the proper reversion factor, from Table A in Regulations 105, § 81.10, to the residuary portion of the estate while taking into consideration the fact that the Park will receive different amounts on the deaths of the life beneficiaries and at the end of the term of ten [10] years. Plaintiffs, on the other hand, assert that the proper method of computation requires a valuation of each of the life interests and the term interest, by using the annuity factors from Table A, and subtracting the sum of these values from the total residuary estate at the date of death. The government's method results in a valuation of the charitable remainder at $773,854.58, while the plaintiffs' method gives a value of $810,345.61. The difference in these results is primarily due to the fact that the annuity factors in Table A do not include the value of the income during the last year of the annuitant's life, so that the annuity factor is somewhat smaller than that which would be obtained if the last year's income were included, decreasing the present value of the annuity and thereby increasing the value of the remainder when the indirect method is used, while the reversion factors in the same table assume that the remainder will not spring into existence until the end of the year in which the intervening interests terminate, an assumption which results in a slightly lower reversion factor which, in turn, when multiplied by the residuary estate, produces a present value of the remainder smaller than that which would result from a computation taken from the exact hypothetical date of the intervening interests' termination.

In a civil suit for the refund of taxes, the taxpayer has the burden of establishing the incorrectness or unreasonableness of the government's method of computation, and failing that burden, the government's method must stand as correct. Table A of Regulations 105, § 81.10 can be used where there is only one interest intervening before the remainder or reversion vests. If there is more than one intervening interest, the taxpayer's method must be supported "by a full statement, in duplicate, of the computation of the present worth made, in accordance with the principles set forth in 81.10 by one skilled in actuarial computation." Regulations 105, § 81.44.

The essential difference between the parties is whether the so-called direct or indirect method of valuing the charitable remainder is to be used.

The example in 81.10, although worked out for only one life and so not applicable here, is relied on by the government as establishing the principle of use of the direct method, and so, under § 81.44, requiring use of the direct method in the case at bar even though more than one life is involved.

That is, the government contends that the taxpayer's method of computation is not in accordance with the principles of 81.10 because nowhere in the examples of that section is the so-called indirect method used. Each illustration shows a direct computation by an application of the proper Table A factor to the value of the property at the time of death. And though none of the illustrations deals with more than one

intervening interest, the government asserts that the principles of that section demand the use of the direct method in those cases, too.

In Cromwell v. C. I. R., 1931, 24 B.T.A. 461, a similar problem was presented to the Board of Tax Appeals, now the Tax Court. The decedent's will created a number of annuities and left the residue of his estate to Harvard University, "an admittedly educational institution". Of significance is the court's statement of the problem.

"While the stipulation of the parties would indicate that our problem is to *value the annuities* to determine the value at which they would be included in the gross estate, as we conceive the question, this is not technically correct." Id., 24 B.T.A. at page 464. [Emphasis supplied.]

The court then goes on to point out that the proper approach is to start with the entire gross estate and then subtract those deductions, including the present value of the charitable remainder, allowed by law.

And in Estate of Waldman v. C. I. R., 1942, 46 B.T.A. 291, we find this persuasive language:

"Petitioner contends that the value of the devise should be determined by first valuing the life estate and then subtracting that value from the value of the total residuum at the date of death, the remainder being the value of the devise to charity. Inasmuch as the problem here is to compute the value as of the date of decedent's death of the remainder to charity, we think it clear that the proper method, which was employed by respondent, is to compute the value of the charitable devise subject to the life estate." Id., 46 B. T.A. at page 295.

The court then approved of the application of the proper reversion factor to the value of the residuary estate at the date of death.

The Waldman case repudiates the plaintiffs' contention that the government's method of computation is not in accordance with the principles of 81.10. On page 292 of 46 B.T.A., we find this language:

"[t]hat the value of the charitable devise should be computed by valuing the residue subject to life use by the widow rather than by valuing the life estate and subtracting that value from the total residuary estate at the date of death."

Though the charitable devise there involved was subject to only one intervening interest, the holding of the case would appear to be a clear indication of the proper method to be employed in any case, no matter how many intervening interests, when the value of a charitable remainder must be computed.

■ Both cases support the Commissioner in the present case, if that were necessary, but what is more important, they show the incorrectness of the plaintiffs' method in valuing the charitable remainder. Not having called to the court's attention any incorrectness or unreasonableness of the Commissioner's method, we must hold that the plaintiffs have failed to sustain the burden of proof required of them in a suit for the refund of taxes.

One other contention much stressed by plaintiffs deserves mention. A part of the government's method to which the plaintiffs object is the government's use of four hypothetical trusts for the purpose of computing the present value of each of the interests created. They say that the terms of the will forbid such treatment because all beneficiaries are to be paid from the income of the entire fund.

■ For the purpose of computation, the government actuary divided the trust estate into four funds, each of which will pass to charity at a different time. By this method he was first able to compute the amount of principal necessary to produce the weekly, monthly and annual annuities created under the will, and then was able to reckon the present value of the remainder interest in each of the principal funds so created. This method would appear to be entirely unobjectionable since it was done only for the purpose of computation and in no way was intended as a limitation or direction on the trustees in the administration of the trust. It is merely a mechanical tool nec-

essary to computation by the so called direct method. The plaintiffs have not established that this method is invalid from an actuarial standpoint.

Judgment may be entered for the defendant, the United States.