ESTATE OF HELEN STOW DUKER, SAFE DEPOSIT & TRUST COMPANY OF BALTIMORE, MARYLAND, JOHN CARROLL STOW, CHARLES E. COCKEY, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 32361. Promulgated August 20, 1952.

*William E. Davis, Esq.*, for the petitioners.
*Philip A. Bayer, Esq., Stephen P. Cadden, Esq.*, and *John L. Pedrick, Esq.*, for the respondent.

OPINION.

TIETJENS, *Judge:* This proceeding involves a deficiency of $3,114.86 in the estate tax liability of the above named estate and, also, a claimed overpayment of $5,470.63 in estate taxes.

The question presented is whether respondent erred in determining the amount of $47,873.33 as the value of the charitable residue under decedent's will, allowable as a deduction for estate tax purposes.

It is stipulated that in determining the residue of the testator's estate and the charitable deduction, respondent computed Maryland State inheritance taxes in the amount of $2,556.34, which have since been ascertained and paid in the amount of $2,099.96 and that proper credit will be given accordingly.

This proceeding was submitted under Rule 30 of the Court's Rules of Practice and upon a stipulation of facts embracing exhibits attached thereto. The stipulated facts are found accordingly and included herein by reference.

The decedent, Helen Stow Duker, died testate on January 4, 1948, a citizen of the United States and a resident of Baltimore, Maryland. The petitioners John Carroll Stow, Charles E. Cockey and the Safe Deposit & Trust Company of Baltimore are the duly qualified and acting executors of decedent's will and the latter is the trustee under the will and custodian of the assets of the estate. The executors filed a Federal estate tax return upon which they claimed a charitable deduction of $61,277.74 and the estate taxes shown to be due on that return have been paid.

Under the terms of her will, *inter alia,* the decedent devised and bequeathed to her brother John the right to occupy her home during his natural life free of all expenses, taxes, insurance, liens, etc., said expenses to be paid by her executors and trustee and charged to the income from the residue of her estate. Further, the decedent devised and bequeathed the residue of her estate in trust to pay, from the date of her death, the entire net income therefrom to her brother John during his natural life in monthly installments, such payments to be not less than $10,000 in any calendar year and in the event the net income be insufficient to invade the corpus of the trust estate to make up the difference, and, upon the death of her brother John to distribute the remainder of the trust corpus to certain designated charities. The decedent's brother John was 71 years of age at the date of her death.

On the Federal estate tax return the executors reported a gross estate of $172,949.06 and after allowances for administration expenses, legacies, inheritance taxes, Federal estate taxes, etc., a residue of $129,988.28. The executors computed the value of John's life income interest at $10,000 x the age 71 factor 6.02612 or $60,261.20 and they estimated the expenses for John's lifetime occupancy of decedent's

home at $1,402.12 per annum x the age 71 factor 6.02612 or $8,449.34, making a total present value for John's life interest at $68,710.54 which they subtracted from the above residue of $129,988.28, leaving a remainder of $61,277.74 claimed as an allowable charitable deduction.

The executors estimated that the annual income from the residue left in trust would amount to less than half of the annual charge of $11,402.12 payable to or for the benefit of the life tenant, so that an annual invasion of the trust corpus would be required so long as the life tenant lived.

The respondent determined the residue of decedent's estate to be $126,135.64 which is subject to adjustment pursuant to the stipulation herein. The respondent determined the amount of $47,873.33 as the present worth or value, at date of the decedent's death, of the remainder bequeathed to charity and allowed such amount as a deduction in determining the deficiency involved herein. The respondent computed that value in the following manner:

| | |
|---|---|
| Residue _____ | $126,135.64 |
| Sum required to produce $10,000 annually payable monthly to life tenant and $1,402.12 annually capitalized at 4% equals_____ | $289,603.00 |
| Residue available_____ | 126,135.64 |
| Shortage_____ | $163,467.36 |
| Remainder of a fund of $289,603 required as above for a life tenant age 71 years. Table A column 3 using factor .72976 equals_____ | $211,340.69 |
| Less shortage_____ | 163,467.36 |
| Charitable residue_____ | $47,873.33 |

As used by respondent in the above computation, the factor .72976 represents the present worth of a reversion or remainder interest of $1 due at the end of the year of death of a person, the life tenant, 71 years of age as set out in column 3 of Table A (at page 30) Regulations 105 and appearing in section 81.10, "Valuation of property," which is referred to in section 81.44, "Transfers for public, charitable, religious, etc., uses."

The parties have stipulated that, "The factor of .72976 as used by respondent for a person 71 years of age is not questioned, but, the method of its application by respondent gives rise to the sole question in this case."

The petitioners question the respondent's method as being wholly theoretical, but more particularly urge that the "shortage" should be allocated by applying thereto the remainder factor .72976 as the portion thereof attributable to the charitable bequest (leaving a factor of .27024 attributable to the life estate) thereby producing a deductible charitable residue of $92,048.75. Petitioners then point out that such amount is identical with the amount which would be produced by

directly applying the remainder factor .72976 to the respondent's figure of $126,135.64 residue of the estate. This latter circumstance points up the fallacy of petitioners' contention for the reasons that (1) in the instant case the trust corpus will be invaded each year the life tenant lives thereby reducing the charitable residue and (2) the direct application of the remainder factor .72976 to the estate residue of $126,135.64 would be proper to determine the present worth thereof only in the event such amount had been bequeathed to charity with postponement while the life tenant received merely the net income therefrom, without right of invasion of the corpus. The petitioners' contention for a finding of a deductible charitable bequest of $92,048.75 and, based thereon, of an overpayment of estate taxes must be denied.

Petitioners further contend that a charitable bequest of $61,277.74 as reported on the estate tax return should be sustained as having been computed with the use of "true" figures. Based on the figures reported on the return they argue that the residue of decedent's estate in the amount of $129,988.28 less $68,710.54 the value of the life estate (as representing the "true fund" consisting of both income and corpus which would be exhausted at the end of the life expectancy) leaves a charitable remainder of $61,277.74. That contention is not supported by the cases relied upon, namely, *Ithaca Trust Co.* v *United States*, 279 U. S. 151, and *Commissioner* v. *Bank of America Nat. Trust & Savings Ass'n*, 133 F. 2d 753. The quotations from those cases appearing in petitioners' brief are not applicable here. Those cases decided that the existence of a power to invade corpus for the benefit of a life tenant is not sufficient to deny *any* deduction for a charitable remainder bequest where, as in those cases, the facts showed that the exercise of the power of invasion is fixed by standards and the probability of invasion remote, so that the charitable remainder is capable of ascertainment and, accordingly, a deduction of the value thereof allowable. The *Ithaca Trust* case further decided that the value of a remainder bequest is diminished by the postponement lasting as long as the life tenant lives, and the value thereof, as of the date of the testator's death, must be ascertained by mortality tables showing the probable life expectancy of the life tenant.

We have heretofore expressly disapproved of the method of valuation advanced by petitioners in the next preceding paragraph and have held that where the problem presented is the value of the remainder to charity, the proper method is to compute the value of the charitable bequest *subject* to the intervening life estate. *Estate of Leonard S. Waldman*, 46 B. T. A. 291, and *William Nelson Cromwell, et al., Executors*, 24 B. T. A. 461. See also, *Betty Dumaine*, 16 T. C. 1035, wherein we discussed the use of a curtate factor as an accepted method for valuing life estates, annuities, remainders and re-

versions and noted that there is always a "spread" of difference between the aggregate ascertainable values of the parts and value of the whole. Furthermore, if it could be said that the petitioners' approach presented an acceptable method as far as it goes, it would have to be carried one step further to ascertain the present worth of the amount representing the difference between the residue of the estate and the value of the life estate. On the basis of petitioners' figures the effect of their contention is that the testator left a residuum estate of $129,988.28 of which she gave $68,710.54 to her brother John for his use and exhaustion during his life and at his death the remainder of $61,277.74 to charity, but that remainder would be diminished by the postponement during John's life expectancy and its present worth or value would be ascertained by multiplying $61,277.74 by the remainder factor of .72976 resulting in a sum of approximately $44,718, which is less than the amount determined by respondent.

The problem presented herein is complicated by the fact that the residuum of the testator's estate is definitely subject to invasion during each year that the life tenant lives and we seek an unknown quantity as the probable remainder to go to charity, and further, with such remainder reduced to present value as of the date of the testator's death. On brief respondent cites actuarial tables to show that, based on the probability of a person aged 71 surviving 15 years, the chances are better than one in ten that charity will take nothing under the bequest. In connection therewith respondent sets out a computation showing that beginning with a principal fund of $126,135.64 and adding 4 per cent interest to the principal and deducting the annual payment to the life tenant for each of 15 successive years, the entire fund would be exhausted if the life tenant lived that long. The petitioners say that the computation is correct and discloses that at the end of the life tenant's life expectancy of 8 years the remaining principal of the fund amounts to $65,886.64 which should be allowed as the minimum deduction on account of the remainder bequest to charity. However, even if such a method were a proper one to determine how much of the residue of the estate probably would be exhausted by invasion for the life tenant and thus how much probably would remain for charity, that amount of $65,886.64 would have to be diminished because of the postponement of enjoyment during the life of the life tenant and the application thereto of the remainder factor of .72976 would produce a present value, at date of testator's death, of approximately $48,081 which is only slightly in excess of the amount determined and allowed by respondent.

The method used by respondent in his determination is based on a computation of the value of the charitable remainder *subject* to the intervening life estate and since that is the proper approach and

since petitioners fail to establish any better acceptable method, the result obtained by respondent's method is approved.

In view of the stipulation of the parties affecting the amount of the residue of the testator's estate,

*Decision will be entered under Rule 50.*