ESTATE OF JEAN S. ALEXANDER, RAYMOND T. ZILLMER, ADMINISTRATOR C. T. A., PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

FIRST WISCONSIN TRUST COMPANY, TRANSFEREE, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ELSIE D. KIPP, TRANSFEREE, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 38977, 41122, 41123. Filed December 22, 1955.

*Charles E. Prieve, Esq.*, for the petitioners.
*Robert R. Veach, Esq.*, for the respondent.

604

OPINION.

BRUCE, *Judge:*

## *Issue 1.*

The first issue for decision is whether the Estate of Clarence F. Kipp is entitled to a deduction under former section 812 (b) (5),[1] Internal Revenue Code of 1939, for the $23,000 claimed as a widow's support allowance. Section 812 (b) (5), as in effect at the date of death of decedent,[2] allowed a deduction for the amounts "reasonably required and actually expended for the support during the settlement of the estate of those dependent upon the decedent," as allowed by the laws of the jurisdiction under which the estate is being administered.

The parties are in agreement that the payments were reasonable in amount, and that they were actually expended during the settlement of the estate. The only question is whether the allowance was authorized by the laws of Wisconsin, the laws under which the estate was being administered. The applicable provisions of the Wisconsin Statutes[3] as of the date of the death of decedent are as follows:

313.15 **Distribution of personalty.** When any person shall die possessed of any personal estate or of any right or interest therein, whether disposed of by will or not, the same shall be applied and distributed as follows:

\* \* \* \* \* \* \*

(2) ALLOWANCE TO FAMILY. The widow and minor children, or either, constituting the family of the deceased testator or intestate, shall have such reasonable allowance out of the personal estate or the income of the real estate of the deceased as the county court shall judge necessary for their maintenance during the progress of the settlement of the estate, but never for a longer period than until their shares shall be assigned to them, and in case of an insolvent estate not longer than one year after granting letters testamentary or of administration.

A brief review of the facts pertinent to this issue will be helpful. Under the will of Clarence F. Kipp, Elsie D. Kipp is to receive, as long as she lives or does not remarry, the net income from the residue of the estate remaining after the payment of $1,800 per year to Jean S. Alexander as long as she shall live or until the termination of the trust, whichever is the shorter period. The payments to Jean S. Alexander were to begin on the transfer of the residuary estate by the executrix

---

[1] SEC. 812. NET ESTATE.

For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—

\* \* \* \* \* \* \*

(b) EXPENSES, LOSSES, INDEBTEDNESS, AND TAXES.—Such amounts—

\* \* \* \* \* \* \*

(5) reasonably required and actually expended for the support during the settlement of the estate of those dependent upon the decedent,

as are allowed by the laws of the jurisdiction, whether within, or without the United States, under which the estate is being administered, \* \* \*

[2] Section 812 (b) (5) was repealed by section 502 (c) of the Revenue Act of 1950.

[3] Wis. Stats. (1947).

to the trustees. However, Clarence F. Kipp directed that "The payments herein provided for my wife, Elsie D. Kipp, shall commence with the date of my death and shall be made monthly." On assuming the duties of executrix, Jean S. Alexander issued a check to Elsie D. Kipp for $2,000 on December 11, 1947, exactly 2 months after the death of decedent. Thereafter the executrix paid the widow $1,000 per month to the extent of total payments of $23,000. More than 9 months after the original payment to Elsie D. Kipp the County Court authorized payment to the widow of $1,000 per month for support and maintenance, beginning October 11, 1947. Subsequently the court order was extended for a period of 12 months or until the estate was closed, whichever was the lesser period. The final decree of the County Court provided that the payment be charged to income of the estate and that the balance of the income be distributed to the widow. It also found that the widow was "entitled to the net income during the probate of the estate, less the amounts of the widow's allowance * * *." The supplemental final account filed in the probate proceedings evidences that the court's decree was effected—the income of the estate during administration, less taxes and interest expense, was paid to Elsie D. Kipp in the form of 23 monthly payments of $1,000 each and a final distribution of $1,381.43, representing the amount of net income remaining after payment of the $23,000 to her.

Respondent contends that the monthly payments were paid to the widow out of income pursuant to Article IV, paragraph C, of decedent's will, and therefore the County Court authorized payments to Elsie D. Kipp of something to which she was already entitled. Respondent seeks to find support for this argument in the fact that the executrix began the monthly payments more than 9 months before the court authorized them. Respondent argues further that even if the payments were for support they were not made in conformity with section 313.15 (2), Wis. Stats. (1947), in that the payments were from the income of the personalty rather than from the personalty itself or income from realty.

Petitioners argue that the specific orders granting the widow's allowance and directing the executrix to pay it did not refer to the income of the estate and the amount ordered could have exceeded the income and would still have been payable at the rate of $1,000 per month. Petitioners argue further that the final decree should be disregarded because it was issued after the order authorizing payment.

In reaching our determination we are bound by the laws of Wisconsin, more particularly by section 313.15 (2), Wis. Stats. (1947), and the court decisions thereunder. Ordinarily Federal taxing statutes are to be construed to give nationwide uniformity in application; but where, as in the case of section 812 (b) (5), the Federal statute, ex-

pressly or impliedly, under its operation depends on State law, then State law governs. *Burnet* v. *Harmel*, 287 U. S. 103; *Hawaiian Freight Forwarders, Ltd.* v. *Commissioner*, 196 F. 2d 245; *Phillips Petroleum Co.* v. *Jones*, 176 F. 2d 737; *Gallagher* v. *Smith*, 223 F. 2d 218; *Courtland Kelsey*, 14 T. C. 107.

The Wisconsin Supreme Court construed section 318.01 (2), Wis. Stats. (1927), (corresponding to section 313.15 (2), Wis. Stats. (1947)) as requiring that the County Court grant an allowance, at least where there are funds available for that purpose. *Estate of Sullivan*, 200 Wis. 590, 229 N. W. 65. Herein the County Court directed that a support allowance be paid. Where there is no evidence to the contrary we cannot presume that the County Court acted otherwise than according to Wisconsin law. See *Freuler* v. *Helvering*, 291 U. S. 35. See also *Weyenburg* v. *United States*, (E. D., Wis., Oct. 27, 1955) 135 F. Supp. 299.

Accordingly, we hold that the County Court granted a support allowance and that it was granted according to the laws of Wisconsin; and that petitioners are entitled to deduct the $23,000 in determining the value of the net estate for Federal estate tax purposes. Cf. *Estate of Charles H. Franklin*, 43 B. T. A. 612.

We find no merit in the argument by respondent that the payments were authorized and directed by the will and that they would have been paid to Elsie D. Kipp notwithstanding the County Court's order to make monthly support payments. Under Wisconsin law a husband cannot dispose of his property so as to prevent the County Court from exercising its power to grant a support allowance. *Baker* v. *Baker*, 57 Wis. 382, 15 N. W. 425. Even if the widow has other means of support, the allowance must be granted. *Estate of Sullivan, supra*. The County Court gave effect to the direction of paragraph C of Article IV of the will when it ordered that the $1,381.43 which remained as net income after taxes, interest, and the support allowance, be paid to Elsie D. Kipp.

Similarly, we find it of no consequence for Federal estate tax purposes that the executrix began payments approximately 9 months before the County Court authorized payment. It is not an uncommon occurrence for an executor to advance support to the dependents of a deceased husband before authorization by the Probate Court. In so acting the executor is held personally responsible for the advances; but when the Probate Court subsequently authorizes the payments, he is relieved of the liability. *King* v. *Whiton*, 15 Wis. 684; cf. *Washburn* v. *Hale*, 10 Pick. 429 (Mass.). In the instant case the Milwaukee County Court not only authorized the payments but also provided that they should begin on October 11, 1947.

*Issue 2.*

The major issue involved in these proceedings is the amount of the charitable deduction allowable to the estate. The parties are in agreement that the Milwaukee Foundation will take something by virtue of Article IV, paragraph G, of the will. They cannot agree, however, as to the present value of the remainder interest thus bequeathed.

The principal source of the disagreement of the parties is the question whether the payments required by the will could possibly cause an invasion of the principal of the trust which could not be restored from income prior to the trust's termination. This question in turn depends on two others, viz, the value of the residue of the estate which is to make up the trust corpus and the projected earnings of the trust property over the life of the trust.

The parties have made extensive arguments which if set out herein would unduly lengthen this opinion. Suffice it to say that we have given careful consideration to these arguments in reaching our result.

We have found from the evidence that a possibility of invasion of the trust corpus existed and there is a possibility that it may not be restored from income prior to the termination of the trust.

Invasion of the trust corpus might occur (1) during the lifetime of both Elsie D. Kipp and Jean S. Alexander to the extent that the annual income of the trust estate is less than $9,000, $1,800 per year being payable to Jean out of income only and $600 monthly being payable to Elsie regardless of the income of the trust; and (2) after the death of Elsie D. Kipp, all other beneficiaries living, to the extent the annual income of the trust estate is less than $10,800, $1,800 per year being payable to Jean S. Alexander out of income only, and $250 per month being payable to Amanda Domsch and $500 per month being payable to Mildred K. Pollard regardless of the income of the trust. Invasion of the trust corpus is also possible under certain other circumstances. Thus, (3) upon the remarriage of Elsie D. Kipp, all other beneficiaries living, the trustees are required to pay $25,000 to Elsie. In addition they are required to pay annually a total of $7,800, of which $1,800 per year is payable to Jean S. Alexander out of income only, and $500 per month to Mildred K. Pollard regardless of the income of the trust; and (4) after the death of Elsie D. Kipp and Mildred K. Pollard, all other beneficiaries living, the trustees are required to pay $1,800 per year to Jean S. Alexander out of income only, $250 per month to Amanda Domsch regardless of the income of the trust, and up to $500 per month to Kipp O. Pritzlaff out of income remaining after the payments to Jean and Amanda. The death of Jean would reduce the amount of possible invasion under each of the situations described

above, and that of Amanda under the situations described in (2) and (4). After the death or remarriage of Elsie D. Kipp and the deaths of Amanda Domsch and Mildred K. Pollard, no payments are required which could possibly involve invasion of the trust estate, since payments to Jean S. Alexander and Kipp O. Pritzlaff are only to be made out of income.

### *Value of Residuary Estate.*

Petitioners have assumed that the value of the residuary estate is approximately equivalent to the value of the assets received by the trustees. We do not agree.

The assets transferred to the trustees are subject to depletion by the payment of certain specific legacies and charges. At the time of the transfer there were still some nominal charges to be paid. Further, the education bequests, the deficiency herein determined, and the expenses in finally determining the Federal estate tax and of this litigation must be deducted from the residue.

Moreover we have determined that the estate is entitled to a deduction of $23,000 as a widow's support allowance. Such amount further reduces the residuary estate. Under Wisconsin law the support allowance is a statutory provision pertaining to the administration of the estate and is intended to provide dependents' support and maintenance during the settlement of the estate. *Estate of Sullivan, supra.* The language of *Estate of Charles H. Franklin, supra,* page 616, is equally applicable to the instant proceedings:

We conclude, therefore, that the payment of a widow's allowance is a cost of and attaches to the administration and settlement of the estate, irrespective of the source from which it came.

The petitioner argues that the estate of a decedent includes both its corpus and the current income therefrom. This is undoubtedly true, but since the income is a part of the estate and the widow's allowance is an expense of its proper administration, such allowance is, under the statute, a charge against the entire estate and not against the income only. The fact that a probate court, by an amended order, directed payment from income does not alter the inherent character of the allowance. Mrs. Franklin received the "widow's allowance" not as a legatee, heir, or beneficiary of the estate, but as a widow of the deceased and by virtue of the statute. As costs of administration, the payments in question were properly deductible in computing the Federal estate tax. * * *

See also *Smith* v. *State,* 161 Wis. 588, 155 N. W. 109; *In re Miller's Estate,* 143 Iowa 120, 121 N. W. 700.

In computing the value of the estate residue the legacy to Jean S. Alexander in Article IV, paragraph B of the will was treated on the estate tax return as a specific bequest. Respondent has accorded this legacy similar treatment, stating on brief that it matters little in mathematical results whether this $1,800 per year legacy be treated as

a specific bequest in computing the residuary estate or deducted from the latter amount in computing the remainder. We think it clear that this legacy has a direct bearing upon the possibility of invasion as its payment would decrease the amount of income available for the annuities to Elsie, Amanda, and Mildred. We agree with petitioners, however, that the value of the residuary estate should not be reduced by the value of the legacy to Jean S. Alexander, as that legacy is payable out of the net income of the trust, if any, and is not payable out of the corpus of the estate or trust.

## Trust Income.

The second facet of the invasion question is the amount of earnings which the trust may earn projected over the future term of the trust. In making his computations respondent has used a 4 per cent interest rate as provided by section 81.10 (j) of Regulations 105. Petitioners agree that the use of a factor based upon a 4 per cent rate in determining the present worth of the remainder is not unreasonable, but object to the use of such rate in determining the question whether the corpus of the trust may be invaded. In this connection they argue that the trust has earned and will continue to earn more than the required payments; and, if there should be a temporary invasion of the corpus the provisions of the will requiring restoration will make certain that at the termination of the trust the remainder will not have been depleted. In our view the same rate is to be applied for both purposes.

It is recognized that frequently the rate of interest propounded in the tables set out in section 81.10 (j), *supra*, may not be the proper rate and that the facts may justify the use of another rate. See *Security-First Nat. Bank of Los Angeles, Executor*, 35 B. T. A. 815; *Huntington National Bank of Columbus, Ohio*, 13 T. C. 760; cf. *United States* v. *Provident Trust Co.*, 291 U. S. 272; *Estate of Nellie H. Jennings*, 10 T. C. 323.

The only evidence in the record as to the probable future income of the trust was presented by petitioners' witnesses. However, we are not bound "to accept the opinions as to valuation of expert witnesses as conclusive, particularly where such opinions are predicated upon factors which we conclude are unsound. Their opinions are to be judged in accordance with the soundness of their reasoning which is disclosed." *Security-First Nat. Bank of Los Angeles, Executor*, *supra*, at p. 821. Petitioners' witnesses assumed that the corpus of the trust would be approximately the same as the value of the assets transferred to the trustees. In view of the foregoing discussion, the inherent fallacies in this assumption are evident.

It is also to be noted that a trust officer of the First Wisconsin Trust Company testified that over a long term, in the light of their experience with the trust and assuming a continuance of the present portfolio, the assets transferred to the trustees could be expected to earn $8,500 annually. This computes to an annual yield of 4.437 per cent, a difference of less than one-half per cent from the rate urged by respondent. An $8,500 yield would certainly not prevent invasion when payments of $9,000 or possibly $10,800 per year might be required.

Other factors tend to support respondent's contention that although trust earnings have exceeded 4 per cent in the years since the creation of the trust there is no assurance that such earnings can reasonably be expected to continue over the term of the trust. The above witness testified that, based upon the present portfolio and the present dividend rates, a return of more than 4 per cent could reasonably be expected, but he could not say whether it is reasonable to assume that stocks now earning 6 or 7 per cent will continue to earn 6 or 7 per cent for the next 20 years. The rate of return on long-term Government securities is approximately 3 per cent. Another of petitioners' witnesses, also a trust officer of the First Wisconsin Trust Company, testified that the estate transferred to the trust certain stocks which he thought speculative and, shortly after receipt of the assets, the First Wisconsin Trust Company, as co-trustee, recommended the sale of 6 different holdings, including the largest mining holdings, but Elsie D. Kipp, co-trustee, objected. The speculative character of mining stocks in general is indicated by the fact that over 30,000 shares of stock in 5 other mining companies were transferred by the estate to the trust with a declared value of "No Value." At present the corpus of the trust consists almost entirely of investments received from the estate.

The 4 per cent interest rate set out in section 81.10 (j) of the regulations has been used for many years in computing the value of a charitable remainder. We have not been able to find that the facts are such as to render the use of this rate inappropriate or unreasonable in determining the question of invasion or in measuring the value of the remainder interest to be received by the Milwaukee Foundation. See *Commissioner* v. *Estate of Sternberger,* 348 U. S. 187; *Betty Dumaine,* 16 T. C. 1035.

### Computation of Deduction Under Sec. 812 (d).

#### (a) Conditional Bequest.

In computing the value of estate residue which will go to the Milwaukee Foundation the residuum must be reduced by the $25,000 payable to Elsie D. Kipp upon her remarriage. For a deduction to be

allowed under section 812 (d),[4] there must be a highly reliable appraisal of the amount the charity will receive. *Ithaca Trust Co.* v. *United States*, 279 U. S. 151; *Henslee* v. *Union Planters National Bank & Trust Co.*, 335 U. S. 595. If as of the date of decedent's death the transfer to the charity is subject to diminution through the happening of some event, "no deduction is allowable unless the possibility that the charity will not take is so remote as to be negligible." Regs. 105, sec. 81.46. We have been unable to find that the possibility of Elsie D. Kipp's remarriage is "so remote as to be negligible." The possibility of an American woman, age 50 (the age of Elsie D. Kipp as of October 11, 1947, computed to the nearest birthday), remarrying is stated as 8.6 per cent in the American Remarriage Table reported at 19 Proceedings Casualty Actuarial Society (May 26, 1933), page 325, and approved in *Maresi* v. *Commissioner*, 156 F. 2d 929, affirming 6 T. C. 582. The possibility of Elsie D. Kipp remarrying is small but it is hardly negligible. The fact that this possibility grows more remote with the passage of time does not alter the Federal estate tax consequences, for the facts at the time of decedent's death are determinative. *Lincoln Rochester Trust Co.* v. *McGowan*, 217 F. 2d 287.

---

[4] SEC. 812. NET ESTATE.

For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—

\* \* \* \* \* \* \*

(d) TRANSFERS FOR PUBLIC, CHARITABLE, AND RELIGIOUS USES.—The amount of all bequests, legacies, devises, or transfers (including the interest which falls into any such bequest, legacy, devise, or transfer as a result of an irrevocable disclaimer of a bequest, legacy, devise, transfer, or power, if the disclaimer is made prior to the date prescribed for the filing of the estate tax return or, in the case of a decedent dying on or before October 21, 1942, if the disclaimer is made prior to September 1, 1944), to or for the use of the United States, any State, Territory, any political subdivision thereof, or the District of Columbia, for exclusively public purposes, or to or for the use of any corporatiton organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation, \* \* \* or to a trustee or trustees, or a fraternal society, order, or association operating under the lodge system, but only if such contributions or gifts are to be used by such trustee or trustees, or by such fraternal society, order, or association, exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, and no substantial part of the activities of such trustee or trustees, or of such fraternal society, order, or association, is carrying on propaganda, or otherwise attempting to influence legislation, \* \* \*. If the tax imposed by section 810, or any estate, succession, legacy, or inheritance taxes, are, either by the terms of the will, by the law of the jurisdiction under which the estate is administered, or by the law of the jurisdiction imposing the particular tax, payable in whole or in part out of the bequests, legacies, or devises otherwise deductible under this paragraph, then the amount deductible under this paragraph shall be the amount of such bequests, legacies, or devises reduced by the amount of such taxes. The amount of the deduction under this subsection for any transfer shall not exceed the value of the transferred property required to be included in the gross estate.

### (b) Remarriage-Annuity Method.

The problem of computing the present value of the charitable remainder is complicated by the fact that the residue of the estate is subject to the possibility of invasion during each year the trust continues and by the fact that the will, in effect, provides for the termination of the trust on the last to happen of the following events:

1. The death or remarriage of Elsie D. Kipp; or

2. The expiration of a 20-year period, which is determined on the basis that in the event Kipp O. Pritzlaff or his issue survive both Elsie D. Kipp and Mildred K. Pollard, the income will continue to Kipp O. Pritzlaff or his children for the balance of the 20-year period.

The parties have submitted several different methods for computing the present value of the charitable remainder; however, no useful purpose would be served in setting out these computations in view of the changes in computation of the residuary estate which we have found should be made.

In general petitioners urge that the direct application of a remainder factor of .438834 to the residuary estate would be proper in the determination of the present value of the charitable remainder. That factor represents the present worth of a reversionary or remainder interest of $1 payable at the end of a 21-year period. Column 3, table B, sec. 81.10 (j), Regs. 105. Petitioners urge the use of such period on the ground that it encompasses the probabilities of life of Elsie, Amanda, and Mildred, and the 40th birthday of Kipp O. Pritzlaff. The method of computation urged by petitioners, however, gives no effect to the possibility of invasion of the corpus. *Estate of Helen Stow Duker*, 18 T. C. 887.

In our view the method used by respondent which considered not only the possibiilty of invasion and the termination of the trust by Elsie D. Kipp's death or the expiration of a 20-year period but also the possibility of remarriage is the proper approach based upon the peculiar facts of this case. We have chosen this method which respondent calls the "Remarriage-Annuity" method over other so-called indirect methods of computation (cf. *Hartford National Bank & Trust Co.* v. *United States*, 106 F. Supp. 76), because this approach recognizes that the trust may terminate and the charity succeed to one-half of the remainder on the remarriage of Elsie D. Kipp. As we have hereinbefore indicated, in computing the present value of the charitable remainder the residuary estate must be reduced by $25,000 payable to Elsie D. Kipp on her remarriage. We do not think it does violence to the rule against conditional bequests to recognize in this computation the fact that the happening of that contingency will increase the present value of the remainder by accelerating the date of enjoyment. Cf. *Commissioner* v. *Estate of Sternberger, supra.*

Under the remarriage-annuity method the value of the remainder, one-half of which will go to the Milwaukee Foundation, is to be determined by subtracting from the residuary estate (reduced by $25,000) the value of the annuities as of October 11, 1947, to Elsie D. Kipp, Amanda Domsch, and Mildred K. Pollard, based upon the Actuaries and Combined Experience Table of Mortality, as extended, with interest at 4 per cent authorized by section 81.10 (j), Regulations 105, and modified where appropriate by the figures established by the aforementioned American Remarriage Table. In addition the possible postponement of the enjoyment of the remainder because of the income interest of Kipp O. Pritzlaff and his children is to be taken into account.

*Issue 3.*

We come next to the question whether the petitioner at Docket No. 38977 is released from personal liability pursuant to section 825 (a), Internal Revenue Code of 1939, for the deficiency herein determined.

Both respondent and the petitioners have called attention to the fact that the determination of this issue is of relative unimportance in view of the fact that the petitioners at Docket Nos. 41122 and 41123 admit liability, as transferees, for any deficiency which may be determined herein in estate tax due from the Estate of Clarence F. Kipp, deceased.[5] There also appears to be no question but that the transferees have sufficient assets on hand out of which such liabilities may be satisfied. Accordingly, it is deemed unnecessary to determine this question at this time and entry of formal decision in Docket No. 38977 will be deferred.

*Decision in Docket No. 38977 will be deferred.*
*Decisions in Docket Nos. 41122 and 41123*
*will be entered under Rule 50.*

---

[5] This admission of liability on the part of the transferees accords with the holding in *Bessie M. Brainard*, 47 B. T. A. 947, wherein it was said that, "although the executors are released from personal liability, there is no provision whatsoever which would bar the respondent from issuing a notice of deficiency to the estate or to the transferee."