**NATIONAL BANK OF COMMERCE IN MEMPHIS and John S. Montedonico, Co-Executors of the Estate of Elizabeth G. Frank, Deceased, Plaintiffs-Appellees,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 19305.**

United States Court of Appeals, Sixth Circuit.

Feb. 16, 1970.

Matthew J. Zinn, Atty., Dept. of Justice, Washington, D. C., for appellant, Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, Jonathan S. Cohen, Chester C. Davenport, Jr., Attys., Dept. of Justice, Washington, D. C., on brief, Thomas L. Robinson, U. S. Atty., Memphis, Tenn., of counsel.

Charles H. Davis, Memphis, Tenn., for appellees, Montedonico, Gilliland, Heiskell, Davis, Canale & Glankler, Memphis, Tenn., of counsel.

Before WEICK, McCREE and BROOKS,* Circuit Judges.

McCREE, Circuit Judge.

Elizabeth G. Frank died testate in 1963 and left the residuary of her estate, approximately $1,000,000, to four trusts. The income from each of these trusts was to be paid to specified individuals for life. Neither the beneficiaries nor the trustees were given any right to invade the corpus. On the death of each life tenant, the corpus of his trust was to be paid over to specified charities.

When Miss Frank's executors prepared the federal estate tax return, they sought to deduct from the gross estate the value of the bequests to charity as permitted by § 2055 of the Internal Revenue Code. They calculated the value of the charitable remainders as $578,-025.90. This figure was obtained by discounting the current market value of the property (about which there is no dispute) by an actuarial figure based on the life expectancy of the life tenant of each trust. The procedure employed is that prescribed by Treas.Reg. § 20.-2055–2(a).

The Government contested this valuation. It determined the value of the charitable remainders to be $369,982.56 by excluding from the value of the residuary estate $253,800 allocated to improvements on real estate, on the theory that there was no assurance that the improvements would outlast the life tenancies. This, of course, increased the estate's tax liability. The executors paid the disputed tax and sued in the District Court for refund. The District Judge granted summary judgment to the taxpayer, and we affirm.

Section 2055 allows deductions from the gross estate of charitable remainders, if the value of the charitable interest is ascertainable at the time of death. Reg. § 20.2055–2(b) provides that a deduction shall be allowed only if the chance of the charity not taking is "so remote as to be negligible." The Government argues that the chance of these charities receiving nothing is greater than negligible, because the real estate improvements have been assigned, for income tax depreciation purposes, an economically useful life of 20 years. and the possibility that each life tenant will survive the decedent by more than

---

* The Honorable Henry L. Brooks, then Chief Judge of the United States District Court for the Western District of Kentucky, sat on this case by designation.

20 years is not so remote as to be negligible.[1] In other words, the Government's position is that the value of the improvements after 20 years will be zero,[2] and that there is a significant chance that each life tenant will still be alive at that time.

■ The District Court rejected the Government's contention that the period of economically useful life assigned to real estate improvements for income tax depreciation purposes is the proper measure for valuing it for estate tax purposes. We agree, for reasons both of precedent and logic.

First, the Government's theory is not supported by the language or structure of the Code or regulations. The regulation concerning transfers not exclusively for charitable purposes, § 20.2055-2, is divided into two sections: § 20.2055-2 (a), pertaining to remainders and similar interests, and § 20.2055-2(b), pertaining to transfers subject to a condition or power. The taxpayer argues that the first section is applicable, while the Government urges application of the second. The transfer here clearly is of the type described in § 20.2055-2(a):

> Thus, if money or property is placed in trust to pay the income to an individual during his life * * * and then to pay the principal to a charitable organization, the present value of the remainder is deductible.

Moreover, in Commissioner of Internal Revenue v. Sternberger's Estate, 348 U.S. 187, 190–192, 75 S.Ct. 229, 99 L.Ed. 246 (1955), the Supreme Court declared that if the remainderman is "assured" of taking something, then § 20.2055-2

(a)[3] must be used to determine its value. Here the charity is assured of taking something, even if we accept, arguendo, the Government's contention that that something may be only fully depreciated real property. Nevertheless, whatever the charity is "assured" of taking must be valued (as it was valued by the taxpayer) according to Reg. § 20.2055-2(a), that is, by discounting the current market value by the actuarial life expectancy of the life tenants.

The Government asks us to focus initially on § 20.2055-2(b), to determine whether or not the charity will take anything. It relies on cases which hold that when a charitable remainderman is not "assured" of taking something, no charitable deduction can be allowed. E. g., Commissioner of Internal Revenue v. Sternberger's Estate, 348 U.S. 187, 75 S.Ct. 229, 99 L.Ed. 246 (1955) (charity takes only if 62-year-old wife and 27-year-old divorced and childless daughter die without issue). In those cases, it is entirely possible that the charity will never receive anything, but in the case at hand the only uncertainty concerns the value of a corpus which will assuredly go to the charities on the deaths of the life tenants. There is no statute, regulation, ruling, or reported case which even suggests that the diminution in value of tangible assets is relevant to valuation for estate tax purposes. On the contrary, the only reported case touching on the issue, J. C. Gutman, 41 B.T.A. 816 (1940), holds that income tax depreciation is irrelevant in determining the present value for gift tax purposes[4] of a remainder consisting of realty.

1. The life tenants' chances of living 20 years longer than Miss Frank range from 24% (the 63-year-old) to 91% (the 29-year-old).

2. In another context the Government has taken a similar position, *viz.*, that tangible assets are presumed not to exist after the expiration of the income tax depreciation period. Another panel of this court characterized this theory as "bizarre" and "unsupportable". Mackinac Island Carriage Tours, Inc. v. Commissioner of Internal Revenue, 419 F.2d 1103 (6th Cir. 1970).

3. Actually the case involved the pre-1954 predecessor of § 20.2055-2(a), which is virtually identical to the current regulation.

4. We see no reason for distinguishing between gift and estate taxes in this context. The pertinent regulations are almost identical. Reg. §§ 20.2055-2(a), 25.2522(a)-2(a).

The basis for this holding is readily apparent. "The essence of depreciation is the spreading of loss over the years when a gradual loss is deemed to occur." 4 J. Mertens, Law of Federal Income Taxation, § 23.01, at 7 (1966). Under our system of taxation, any amount or period allowed for depreciation is necessarily imprecise. The alternative of determining the amount of use or diminution in value each year, which would produce more accurate values, is for obvious reasons deemed too expensive to administer. In the real estate area, it is even clearer that the depreciation allowance is in a sense a legal fiction, because successive purchasers can depreciate the property over and over again, using as a basis their purchase price. See Reg. §§ 1.167(g)–1, 1.167(a)–1.[5] Future real estate values are, quite literally, a matter of speculation, and presumably the market value of realty improvements, which forms the basis for the calculation required by § 20.2055–2(a), takes into account likely future physical depreciation. J. C. Gutman, 41 B.T.A. 816, 819 (1940).[6]

If its initial claim is rejected, the Government asks in the alternative that we remand the case to the District Court for a determination of the actual economic life of the improvements. We see no reason to do this. The trustees of each trust are empowered to sell any of the trust property, and in some cases they have already done so. Thus there is no assurance that the corpus of the trusts, which will eventually go to the charitable remaindermen, will consist of real estate improvements.[7] Therefore, it is far more likely that what the charities will eventually receive can be valued accurately by discounting the corpus' current market value than by embarking on an onerous and expensive inquiry into the probable life of the physical assets in question. We find nothing in the Code, the regulations, or the reported cases, and the Government has put forward no authority, to suggest that the federal courts should attempt to make de novo this kind of determination. On the contrary, under our system of taxation, inquiries of this kind are, at least initially, the business of administrative bodies.

The judgment of the District Court is affirmed.

5. The notion that buyers and sellers of realty improvements treat the values indicated by depreciation schedules as an accurate prediction of purchase prices would strike anyone acquainted with the real estate field as absurd.

6. The Government may object that the determination of the present value of future interests by discounting market value is as imprecise as determining it by consulting depreciation schedules. Both methods are of course subject to error, as is any method of determining future value, if only because it is impossible to predict with certainty fluctuations in market value. See J. C. Gutman, 41 B.T.A. 816, 818–819 (1940). But it is the former method, the one used by the taxpayer here, which has been prescribed by the Government for more than 50 years. See Commissioner of Internal Revenue v. Sternberger's Estate, 348 U.S. 187, 190, 75 S.Ct. 229, 99 L.Ed. 246 (1955).

The Government could just as easily make an analogous argument about non-depreciable assets. Common stocks, for example, may indeed become worthless while held in trust for a life tenant, but their value to a remainderman is determined by the market value at the time of the establishment of the trust, discounted by an actuarial factor reflecting the life tenant's life expectancy, on the assumption that the securities market discounts for the possibility that the stock may become worthless.

7. This fact also disposes of the Government's argument that the property will eventually decline to zero in value because the trustees are not maintaining a reserve fund for maintenance although they are authorized to do so. Reg. § 20.2055–2 (a) implicitly assumes that trust property is transferable, because it treats all property the same, i. e., as if it were totally fungible with cash.