ESTATE OF MARIE BACHMAN, Deceased, THE INDIANA NATIONAL BANK, Executor, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Bachman v. Commissioner
Docket No. 910-73.
United States Tax Court
T.C. Memo 1975-186; 1975 Tax Ct. Memo LEXIS 189; 34 T.C.M. (CCH) 800; T.C.M. (RIA) 750186; June 12, 1975, Filed Charles F. Cremer, Jr., for the petitioner. Thomas J. Meyer, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent determined a deficiency in the estate tax of the decedent in the amount of $103,767.50. It having been conceded by respondent that the estate is entitled to a charitable deduction for certain charitable remainder interests, the only issue involves the amount of the deduction. Specifically, we are asked to determine (1) the proper method of valuation of charitable remainder interests subject to intervening life estates where the life beneficiaries are entitled to the income for life but in no event less than $5,000 per year, and (2) whether depreciation must be taken into account in the valuation of the charitable remainder interests in certain *191 improved residential real estate. With respect to the former issue we must first determine whether the possibility of invasion of principal is so remote that it must be discounted in its entirety in computing the value of the remainder interests. FINDINGS OF FACT Some of the facts have been stipulated, and these facts, together with the exhibits attached thereto, are found accordingly. Marie Bachman died testate on March 26, 1970, a resident of Marion County, Indiana. The Indiana National Bank, with its principal office located in Indianapolis, Ind., was appointed executor of the estate on April 3, 1970, by the Probate Court of Marion County, Indiana. The Federal estate tax return was filed with the district director of internal revenue, Indianapolis, Ind.
Under decedent's last will dated July 27, 1962, her residuary estate was devised as follows: ITEM VIII
All of the rest, residue and remainder of my estate, real, personal and mixed, of every nature and wherever situate of which I die seised, or have the right to dispose of at the time of my death, such residue being hereinafter referred to as Trust Property, I give, devise and bequeath to the hereinafter named Trustee, *192 in four separate Trusts designated as A, B, C and D, for and upon the uses, trusts and purposes, and subject to the conditions hereinafter expressed. Receipt of the Trustee for the property so conveyed, transferred, assigned, delivered or paid over to said Trustee, shall be a sufficient and complete acquittance to my Executor. ITEM IX
I constitute and appoint the Indiana National Bank of Indianapolis as Trustee of the aforesaid Trusts and the authority, powers and duties of said Trustee shall be as hereinafter designated. (a) The immediate beneficiaries, all presently residing in Indianapolis, Indiana, who shall be entitled to the net income and principal, if necessary, of their respective Trusts are as follows: Trust "A" 1. Kathryn Borman Short and her husband, Hubert Short, or the survivor of them. Trust "B" 2. Earl Rohr and his wife, Lucille Rohr, or the survivor of them. Trust "C" 3. Carl Rohr and his wife, Mary Rohr, or the survivor of them. Trust "D" 4. Helen Dietz, a widow, and presently unmarried. Any issue of the aforenamed are expressly excluded from any beneficial interest in said Trust Income or corpus. (b) Said Trustee shall, commencing at my death, *193 pay the entire net income of said Trusts in converient installments "at least semi-annually" share and share alike to the three aforedesignated husbands and wives, who shall be deemed an entity, and Helen Dietz, a widow, as long as they shall live. If the net income shall not produce Five Thousand Dollars ($5,000.00) per year for each of the four beneficiaries of said Trusts, the Trustee is empowered to encroach on the principal to the extent that each of the four parties will receive annually at least Five Thousand Dollars ($5,000.00) per year. Upon the death of the beneficiaries entitled to share in the proceeds of the Trusts heretofore created, that particular Trust shall cease to exist, and terminate, and the Trustee shall pay over and transmit the corpus of such Trust to the Indiana National Bank, as Trustee, for the Indianapolis Foundation as established by Resolution January 5, 1916. All of the noncharitable trust beneficiaries were living at decedent's death. Their ages at decedent's death are set forth in the margin. [1]
*194 At the time of her death, the decedent owned three parcels of improved residential real estate. Subsequent to the execution of her last will, the decedent executed two codicils pertaining to the disposition of this real estate. The first codicil dated April 22, 1964, provided: I give and devise to my cousin, Kathryn Borman Short and Hubert Short, her husband, or the survivor of them, a life interest in and to the following described real estate situate in Indianapolis, Marion County, Indiana, known as 5969 Gladden Drive and more particularly described as follows: Lot Numbered One Hundred Seventy-five (175) in Meridian Kessler Terrace, an Addition to the City of Indianapolis, as per plat thereof recorded in Plat Book 25, pages 335 to 338, inclusive, in the office of the Recorder of Marion County, Indiana, except six (6) feet taken by parallel lines off the entire Southeasterly or Canal side of said Lot; Upon the death of the survivor of said Kathryn Borman Short and Hubert Short, her husband, the remainder interest shall cease. I give and devise the fee simple remainder interest to said real estate to the Indiana National Bank of Indianapolis, Trustee, so designated in ITEMS *195 IX and VIII, which is empowered to dispose of said property in accordance with the terms of my trust created in my Will. Should the residence now situate on said real estate be destroyed by any cause whatsoever while occupied by said life tenants, or the survivor of them, and not reconstructed or repaired or rehabilitated or made fit for habitation and put into the same state and condition as existed prior to such casualty within a year thereafter, any proceeds from insurance payable as a result of such casualty shall also revert and become the property of my Trustee. * * * * *
I give and devise to my cousin, Earl Rohr, and his wife, Lucille Rohr, or the survivor of them, a life interest in and to the following described real estate situate in Indianapolis, Marion County, Indiana, known as 954 Hervey Street and more particularly described as follows: Lot Numbered Eighteen (18), in St. Catherine Garfield Park Addition to the City of Indianapolis, as per plat recorded in Plat Book 15, page 182, in the office of the Recorder of Marion County, Indiana. Upon the death of the survivor of said Earl Rohr, and his wife, Lucille Rohr, the remainder interest shall cease. I give and *196 devise the fee simple remainder interest to said real estate to the Indiana National Bank of Indianapolis, Trustee, so designated in ITEMS IX and VIII, which is empowered to dispose of said property in accordance with the terms of my trust created in my Will. The second codicil dated September 6, 1969, provided: I hereby give and devise to my cousin, Kathryn Short and Hubert Short, her husband, or the survivor of them, a life interest in and to the following described real estate situated in Indianapolis, Marion County, Indiana, known as Lot Forty-two (42) in "Justus 16th St. Addition, Second Section," an Addition to the City of Indianapolis, Indiana, as per Plat thereof recorded in Plat Book 27, pages 280 and 281, in the Office of the Recorder of Marion County, Indiana, known also as 1450 N. Leland Ave. With right to occupy said property, pay all taxes and insurance thereon and also maintain said property during the lifetime of said Hubert and Kathryn Short, and upon the death of the survivor of Kathryn Short and Hubert Short, her husband, the property shall revert to my Trustee to become part of the Trust created in my Will. At the date of decedent's death, the net distributable *197 residuary estate, exclusive of the real estate, was approximately $454,000. This amount does not take into account the current alleged deficiency. OPINION The parties are in agreement that the estate is entitled to a charitable deduction under section 2055 [2] as it read prior to its amendment by section 201(d), Tax Reform Act of 1969, Pub. L. No. 91-172, 83 Stat. 560. [3] There is also no dispute as to the proper remainder factors to be employed. [4] The only questions relate to the valuation of the charitable remainder interests herein. First, we are asked to ascertain whether petitioner's method of valuation was proper. The burden of proof is upon petitioner. Welch v. Helvering,290 U.S. 111 (1933); Rule 142, Tax Court Rules of Practice and Procedure.
Petitioner submits that the charitable *198 remainder interests of each trust should be valued by applying the remainder interest factor as found in respondent's regulations (section 20.2031-7(f), Estate Tax Regs.) directly to the value placed on each trust. Respondent, on the other hand, argues that such calculations fail to take into account the power expressly conferred upon the trustee to invade the corpus of each trust for the benefit of the noncharitable life beneficiaries. The crux of this issue turns upon the possibility of invasion of the corpus to meet the current distribution requirements of each trust. To prevail petitioner must establish an expected rate of return as of the date of death sufficient to render the power negligible. Although respondent's regulations set forth a 3-1/2 percent rate [5] (see section 20.2031-7, Estate Tax Regs.), petitioner is not necessarily bound by that rate; evidence may be produced which would allow the use of a higher rate. Cf. Estate of Jean S. Alexander,25 T.C. 600, 613-614 (1955). *199 In valuing the remainder interests herein for estate tax purposes, the critical date is the date of death. Ithaca Trust Co. v. United States,279 U.S. 151 (1929); Florida National Bank at St. Petersburg v. United States,310 F. Supp. 1321, 1324-1325 (M.D. Fla. 1969). All evidence must be directed to this point in time. As the rate employed for determining present value must be the rate in existence at the date of death, consistency requires that the same rate must be employed in determining the possibility of invasion of corpus. Cf. Estate of Jean S. Alexander,supra at 613. Unfortunately, petitioner has presented no evidence with respect to the expected rate of return at date of death. This is the fatal flaw in petitioner's case. All of petitioner's evidence presented to support a higher rate was directed to the period following decedent's death, e.g. evidence relating to the rate of return and valuation at the time of trial, to investments made after date of death and to those anticipated in the future. This evidence is not relevant to the issue at hand. Ithaca Trust Co.,supra.Compare Lydia Hopkins,13 T.C. 952 (1949). *200 Valuations, and rates employed to determine such valuations, must be based only upon factors in existence at the date of death and not on factors arising subsequent to death. As petitioner has made no attempt to show a nexus between its evidence (which suggests a rate of between five and six percent) and the factors in existence at death, its evidence is not competent to demonstrate the proper employment of a rate higher than the rate in respondent's regulations. Consequently, we are left with the 3-1/2 percent rate proposed by respondent and prescribed by his regulations. [6]
We recognize that regardless of the point in time used, the valuation herein (i.e., the value as of the date of death of the remainder interests) can only be estimated. We cannot foretell the future. Whether a valuation or rate of return will increase or decrease are questions not capable of being answered. However, to *201 insure uniformity in the enforcement of the estate tax provisions, only factors in existence at the date of death are to be considered. Ithaca Trust Co.,supra.
Employing the 3-1/2 percent rate in testing for the possibility of corpus invasion we find that the invasion power is not negligible and cannot be disregarded in computing the value of the remainder interests. Cf. Estate of Jean S. Alexander,supra.
With respect to the method of valuation, respondent's determination is presumed correct. Welch v. Helvering,supra.Petitioner's arguments have all been premised upon the negligible effect of the invasion power. As we have found that petitioner has failed to demonstrate that at the time of death the possibility of invasion of principal was remote, its arguments based thereon become unmerited. Consequently, we accept respondent's use of the formula set forth in Estate of Helen Stow Duker,18 T.C. 887 (1952), in this instance. The second issue is whether depreciation of the improvements on the residential real estate must be taken into account in the valuation of the remainder interests. Petitioner, *202 relying upon National Bank of Commerce in Memphis v. United States,422 F. 2d 1074 (6th Cir 1970); Glenn E. Edgar,56 T.C. 717 (1971); and J. C. Gutman,41 B.T.A. 816 (1940), submits that the value of the remainder interests should not be reduced by depreciation. Respondent, relying upon S. Rept. No. 552, 91st Cong., 1st Sess. 87-89 (1969), 1969-3 C.B. 423, 479-480, urges that we disregard our own precedent and rule that depreciation should be taken into account in valuing these remainder interests. We must hold for petitioner on this point. In this regard we note particularly our language in Glenn E. Edgar,supra at 752-753: In most States, the failure to create a reserve for depreciation does not involve an encroachment on the corpus of a trust. Even in those States which have adopted section 13(a)(2) of the Revised Uniform Principal and Income Act, which generally requires the establishment of a reserve for depreciation, the use of trust property by the life beneficiary as a residence without a reserve for depreciation does not constitute such an encroachment. Bogert, Trusts and Trustees, *203 sec. 829 (2d ed. 1962); 3 Scott, Trusts, sec. 239.4 (3d ed. 1967). Depreciation is treated as having a de minimis effect on the corpus. This treatment evolved because of the difficulty inherent in distinguishing between economic fluctuations in value, which may favorably or adversely affect the interest of the remainderman, and physical deterioration, which ordinarily results in some diminution in the value of the corpus. These considerations caused the Board of Tax Appeals to disregard the element of depreciation in valuing remainder interests for purposes of Federal gift taxes in J. C. Gutman,41 B.T.A. 816, 818-819 (1940), as follows: we are here concerned, not merely with physical condition of a tangible property as affected by passage of time, but with the present worth of an intangible, that is the right to receive in the future a property of value not now subject to exact ascertainment. Without the power of prophecy no one can state the value of the property at some time in the future. * * * If omniscience enabled us to value property in the future, then depreciation for the same period might logically be deducted. Absent such omniscience, the element *204 of depreciation must obviously not enter into consideration. * * * The mortality tables, as in the case of intangibles, such as stocks to be received in the indefinite future, seem to furnish the only practical means of calculation, for we here deal equally with an intangible--the value of a property in the future. * * * Similarly, in National Bank of Commerce in Memphis v. United States,422 F. 2d 1074, 1077 (C.A. 6, 1970), the court allowed an estate tax deduction for a charitable remainder in depreciable real estate, stating: In the real estate area, * * * the depreciation allowance is in a sense a legal fiction, because successive purchasers can depreciate the property over and over again, using as a basis their purchase price. * * * Future real estate values are, quite literally, a matter of speculation, and presumably the market value of realty improvements * * * takes into account likely physical depreciation. We think the reasoning is equally applicable in computing the amount of a charitable contribution deduction for income tax purposes. [n23] [Footnote omitted.] The Senate Finance Committee Report which respondent has relied upon (S. Rept. *205 No. 552, supra) accompanied the Tax Reform Act of 1969 (H.R. 13270 (Pub. L. 91-172)), and provides, insofar as relevant to the instant issue, as follows: The requirement that a deduction is to be allowed only if the remainder interest given to charity is in the form of an annuity trust or unitrust could have a significant adverse effect on established forms of charitable giving, * * * such as a residence, where the donor reserves a life estate in the property. * * * The committee believes that it is possible to continue to allow a charitable deduction in these types of cases with appropriate limitations, however, to prevent the overstating of the charitable contribution deduction. * * * * *
Another additional situation in which the committee amendments allow a charitable contribution deduction for the gift of a remainder interest to charity is in the case of a nontrust gift of a remainder interest in real property to charity. Thus, for example, a charitable contribution deduction is to be allowed where an individual makes a gift of his residence to charity and retains the right to live in the residence for his life. The committee does not believe that this type of situation *206 generally presents the kind of abuse which both the House and the committee believe it appropriate to curtail. Nevertheless, a limited valuation problem is presented even in this type of situation, and for this reason it is further provided that in determining the value of a remainder interest in real property which is given to charity, straight-line depreciation and cost depletion are to be taken into account. Thus, there will be an appropriate reflection in the value of the charitable gift of the decrease in value of the property which may occur as a result of the depreciation or depletion of the property. * * * This portion of the report relates to the treatment of charitable remainder trusts (section 201(a), (d), and (e) of Pub. L. 91-172 (sections 170(f), 664, 2055(e), 2106(a) and 2522(c) of the Code)). Section 201(g)(4)(B) of Pub. L. 91-172 providing effective dates, makes the amendment to section 2055(e) inapplicable to the charitable remainder trusts herein. In our opinion, since the critical language of the Finance Committee report (which lends support to respondent's position) relates to the amendments, whatever authority the report gives for taking depreciation into *207 account in the valuation of charitable remainder interests must be viewed prospectively. Decision will be entered under Rule 155.
Footnotes
1. ↩ Trust
Noncharitable Beneficiary
Age
"A"
Kathryn Borman Short
55
Hubert Short
62
"B"
Earl Rohr
69
Lucille Rohr
65
"C"
Carl Rohr
60
Mary Rohr
60
"D"
Helen Dietz
72
2. All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated. ↩
3. The charitable remainder trusts herein would not meet the requirements of section 2055(e) as it now reads. ↩
4. The remainder factors, agreed to by the parties, are set forth below: ↩ Trust
Remainder Factor
"A"
.47807
"B"
.59656
"C"
.50383
"D"
.74941
5. The 3-1/2 percent rate is effective for decedent's dying prior to January 1, 1971. For decedent's dying after December 31, 1970, respondent's regulations provide for a six percent rate. See section 20.2031-10, Estate Tax Regs. The change to the six percent rate was apparently prompted by the Senate Finance Committee's report accompanying the Tax Reform Act of 1969. See S. Rept. 552, 91st Cong., 1st Sess. 89 (1969), 1969-3 C.B. 423↩, 480, which implies that the 3-1/2 percent is currently unrealistic and suggests the adoption of a six percent rate. However, as petitioner is not contesting respondent's regulations, we do not consider whether the regulations' rate herein is unreasonable.
6. For petitioner to have fully utilized its evidence it would have been necessary to demonstrate that the same factors on which it produced testimony relating to the rate of return at the time of trial also existed at the date of death. No such comparability of factors was presented.↩